JUAN G. RIBOT, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE SAN GERMÁN, recurrido.

*Número:* O-68-141    *Resuelto:* 9 de febrero de 1970

*Luis López de Victoria,* abogado del recurrente; el Registrador recurrido compareció por escrito.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ MATOS emitió la opinión del Tribunal.

Por la escritura pública Núm. 67, otorgada en Yauco, el 17 de abril de 1967, ante el Notario Luis López de Victoria, la señora Estrella Rodríguez, viuda de Gaudín y 15 hijos de su finado esposo, vendieron al recurrente don Juan G. Ribot, una finca rústica de 93 cuerdas radicada en el barrio Indiera Baja del término municipal de Maricao, previamente inscrita en la Sección de San Germán, del Registro de la Propiedad, a nombre de los trasmitentes, según su inscripción 21, finca núm. 891 de ese municipio.

En dicha venta, tres de esos hijos llamados Rosa Julia, Alba y Carlos Alberto Gaudín Rodríguez, estuvieron repre-

sentados por Alejandro Gaudín Rodríguez, hermano de ellos, que también figuró como vendedor.

Presentado el título de compraventa con varios documentos complementarios en el Registro de la Propiedad, se denegó su inscripción por dos notas separadas que dicen así:

"Denegada la inscripción que refiere el documento que precede, por observarse que la cabida de la finca según el Registro es de 93.06 cds. y que en el documento se describe la misma con cabida de 93.00 cds., o sea, una disminución de 6 céntimos de cuerda, lo que hace presumir que de la finca se ha practicado una segregación sin que se acredite en forma alguna que ésta hubiese sido aprobada por la Junta de Planificación de P.R., tomándose en su lugar la correspondiente anotación preventiva por el término legal a favor del comprador, al folio 24 del tomo 40 de Maricao, finca 891 Cuadruplicado anotación letra A. San Germán a 23 de abril de 1968.

"Se hace constar para que forme parte de la nota anterior, que la inscripción se denegó además, en cuanto a las participaciones de Rosa Julia, Alba, Leonor y Carlos A. de apellido Gaudín en la finca por no haberse acreditado las facultades de Alejandro Gaudín para comparecer como apoderado de dichos condueños, ya que de la Escritura de Protocolización de Poder Número 124 que la acompaña no le resultan facultades a dicho Alejandro Gaudín para vender a nombre de dichos condueños las participaciones o condominios que dicen tener en dicha finca. Fecha Ut Supra."

En este recurso el comprador sostiene que erró el señor Registrador recurrido (1) al estimar que la finca vendida aparece inscrita con una extensión de 93.06 cuerdas y no de 93.00 cuerdas como aparece en el documento de venta; (2) al levantar una presunción de que ha habido segregación de seis céntimos en la finca vendida y (3) al estimar que en el documento de poder otorgado por Rosa Julia, Alba y Carlos Alberto, no se concedió al mandatario facultades para vender sus participaciones.

Tiene razón el recurrente. Ambas notas carecen de válidas razones y debe inscribirse el título de compra sin defecto alguno.

I

De esa finca núm. 891 se han practicado 21 inscripciones. Según resulta de la certificación del Registrador unida a los autos, la descripción literal de ella, conforme a su inscripción décima, practicada el 29 de mayo de 1925, es decir, *17 años antes de crearse la Junta de Planificación de Puerto Rico*, es como sigue:

"10a—RÚSTICA: Cuerpo de terreno situado en el barrio de Indiera Baja, término municipal de Maricao, con casa y demás establecimientos, que se componía de *ochentiséis cuerdas*, y según mensura practicada posteriormente, resultó tener una cabida *de noventitrés cuerdas seis céntimos*, cuya descripción consta de las inscripciones primera, quinta y octava que preceden, obrantes respectivamente a los folios doscientos cuarenticuatro, doscientos cuarentisiete vuelto y doscientos cincuenta vuelto del tomo veintidós de Maricao, siendo igual a la que se hace en el documento ahora presentado, *pero con la diferencia de que en éste se expresa que de acuerdo con dicha mensura practicada recientemente, resultó tener esta finca una cabida de noventitrés cuerdas*, equivalentes a treintiséis hectáreas, cincuenta y cinco áreas, veintiséis centiáreas y veintisiete miliáreas." (Énfasis nuestro.)

Se notará que sobre la primera mensura que se hizo del inmueble, no se da noticia alguna de su fecha, pero de la segunda y última mensura que arrojó una cabida precisa de noventa y tres cuerdas, se informa en el Registro que fue "practicada recientemente", en otras palabras, en 1924 ó en 1925.

Después de la segunda mensura, nunca se cambió o alteró la cabida exacta de 93 cuerdas como resultado de alguna mensura posterior y tal situación aparece de la indicada certificación registral librada el 18 de junio de 1968, en los siguientes términos:

"Segundo: Que con posterioridad a dicha *inscripción décima* no aparece del Registro asiento alguno que indique *que como consecuencia de mensura alguna* haya habido inscripción que altere o modifique la extensión superficial de la finca. . . . (Énfasis nuestro.)

■ La cabida de 93.06 cuerdas que por meras declaraciones de particulares o de funcionarios judiciales auxiliares se le pudo atribuir al inmueble en posteriores inscripciones, anotaciones o cancelaciones de anotaciones de embargo, sin base o apoyo de mensura alguna, no puede dar pie a la inferencia que hace el Registrador de que se había hecho en algún momento, una segregación de una porción de seis céntimos de cuerda de la finca.

Si la segunda y última mensura, según el propio Registro, dio una cabida exacta de 93 cuerdas, si no ha habido cambio o alteración en las colindancias de la finca, lo propio era describirla con la correcta cabida, resultado de la mensura del año 1925, que según el propio Registro aparece ser la última mensura.

Las circunstancias concurrentes en los casos de *Rodríguez* v. *Registrador*, 66 D.P.R. 774, 776 (1946) y *Mari* v. *Registrador*, 72 D.P.R. 888, 891 (1951), citados por el Registrador en su alegato, no presentan analogía alguna con las del presente recurso. Las hemos estudiado cuidadosamente; en ellas existieron constancias registrales que sirvieron de sólido fundamento para hacer la inferencia racional de la existencia de anteriores segregaciones al margen del estatuto y los reglamentos aplicables que vedaban la registración. Aquí la cabida que se le atribuye a la finca en el documento de compra es la misma que consta en el Registro revestida de mayor garantía.

## II

La parte vendedora en la compraventa estaba integrada por las siguientes personas: la viuda del finado Gaudín, doña

Estrella Rodríguez; sus hijos (1) Alejandro, (2) César Augusto, (3) Rosa Julia, (4) Carlos Alberto, (5) Alba, (6) Annie, (7) Antonia, (8) María Victoria y (9) Nilda Estrella, de apellidos Gaudín Rodríguez; (10) Juany, (11) Emilia, (12) Angélica, (13) Cecilia, (14) María y (15) Juan, de apellidos Gaudín Casiano.

De estos quince hijos, en unión a la señora viuda de Gaudín, concurren personalmente y por su propio derecho, Alejandro, María Victoria y Nilda Estrella Gaudín Rodríguez y Juany Gaudín Casiano.

Todos los hermanos Gaudín Rodríguez que no concurrieron personalmente a la venta, concedieron poder a Alejandro Gaudín Rodríguez y los hermanos Gaudín Casiano no concurrentes a Juany Gaudín Casiano, para vender sus respectivas participaciones.

Los varios poderes presentados al Registro fueron otorgados mayormente en la ciudad de Chicago y protocolizados, mediante diversas escrituras públicas, en la ciudad de Ponce. Parece que unos poderes fueron redactados con mejor acierto que otros. Pero es innegable que la evidente intención del conjunto de coherederos poderdantes fue la de trasmitir sus respectivos condominios en el único fundo común que poseían en el municipio de Maricao.

Los términos del mandato de Rosa Julia, Alba y Carlos Alberto Gaudín a su hermano Alejandro, vecino de Ponce, redactado en inglés, son los siguientes:

"KNOW ALL MEN BY THESE PRESENTS.—That We, Rosa Julia Gaudín, Alba Gaudín, Leonor R. Gaudín, (1) and Carlos A. Gaudín of the city of Chicago, County of Cook in the State of Illinois have made, constituted and appointed, and BY THESE PRESENTS do make, constitute and appoint ALEJANDRO GAUDÍN of the City of Ponce, County of ———— and State of Puerto

(1) Se habrá observado que en su nota complementaria el señor Registrador también se refirió a Leonor como mandante. Sin embargo, la mencionada certificación registral revela que ella no tenía inscrita participación alguna sobre la finca.

Rico true and lawful Attorney for ourselves and in our names place and stead to grant, bargain and sell any and all interest we and each of us may have in a certain farm located in Maricao, Puerto Rico, which farm belongs to Estrella Ro. vda. Gaudín, giving and granting unto Alejandro Gaudín said attorney full power and authority to do and perform all and every act and thing whatsoever, requisite and necessary to be done in and about the premises, as fully, to all intents and purpose as we, ourselves might or could do if personally present at the doing thereof, with full power of substitution and revocation, hereby ratifying and confirming all that our said attorney or her substitute shall lawfully do or cause to be done by virtue hereof."

A la luz de este texto, las facultades conferidas para vender todo interés que los mandatarios tuviesen, son precisas, expresas y bastantes. Ahora bien, lo que no resulta identificado o descrito con una precisión recomendable, es el inmueble a que ellos se referían.

Hacen referencia al mismo "certain farm located in Maricao, Puerto Rico which farm belongs to Estrella R. vda. Gaudín."

El mandato fue redactado por el Notario Bernard J. Browe de Chicago. No se puede asegurar que siguió algún proyecto o minuta de poder preparado en Puerto Rico para fines registrales.

No obstante ello, confirió facultades accesorias al mandatario que lo habilitan para identificar, en el documento público en que aquí se realizara la venta de sus participaciones, el inmueble sobre el cual tenían sus condominios. En las fechas en que se otorgó el poder, los tres hermanos tenían participaciones inscritas en la finca objeto de venta, según resulta de su inscripción 21, como el señor Registrador recurrido certificó:

"Que a nombre de Rosa Julia, Alba y Carlos A. de apellidos Gaudín Rodríguez, no aparece inscrita, dentro del Municipio de Maricao, alguna otra finca o participación además de la referida anteriormente en el Hecho Tercero precedente."

■ Por otra parte, el mandato no tenía, necesariamente, para ser suficiente, que dar a conocer con exactitud de detalles, los bienes o derechos reales particulares que serían su objeto. Bastaba para fines del Registro, que en términos generales se refiriera a participaciones o intereses sobre bienes inmuebles de los mandantes sitos en el término muncipal de Maricao, Puerto Rico, que estuvieran aquí inscritos a favor de ellos y que el documento final de venta se otorgara con apego a lo prevenido en los Arts. 9 de la Ley Hipotecaria y 75 de su Reglamento.

Aunque la frase "which farm belongs to Estrella Ro. vda. Gaudín" no resultaba enteramente correcta, la misma implícitamente indicaba, en cierto modo, la de 93 cuerdas vendida, que era la única finca en el Municipio de Maricao, de la cual registralmente aparecían siendo condueños.

■ Si bien hemos destacado reiteradamente el criterio restrictivo que preside la materia de interpretación de mandatos, en el recurso de autos, estimamos que el señor Registrador erró al denegar la inscripción de la venta de tales participaciones fundado en la insuficiencia del mandato indicado, tratándose sobre todo, de una venta de la totalidad de un fundo familiar realizada con el concurso concertado de todos los titulares registrales de la comunidad.

*Por todo lo cual se revocarán las notas recurridas y se ordenará la correspondiente inscripción de la compraventa respecto a dichas participaciones.*