CELESTINO SILVA RAMOS, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE GUAYAMA, recurrido.

*Número:* O-78-84 *Resuelto:* 12 de mayo de 1978

242

*Carmelo L. Marcucci,* abogado del recurrente; el Registrador recurrido compareció por escrito.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

En el Registro de la Propiedad, Sección de Guayama, se presentó para inscripción la escritura Núm. 280 otorgada en San Juan el 17 de octubre de 1977 ante el notario Lic. Carmelo L. Marcucci Cruz mediante la cual el Estado Libre Asociado de Puerto Rico a través del Secretario de la Vivienda "concedió título de propiedad"[1] al recurrente Celestino

---

[1] La Ley Núm. 35 de 14 de junio de 1969 (28 L.P.R.A. sec. 681 y ss.) dispuso:

Sección 681. *Título de Propiedad*

"Se autoriza al Secretario de Agricultura de Puerto Rico a conceder título de propiedad a los usufructuarios u ocupantes de parcelas en las comunidades establecidas conforme a las disposiciones del Título V de la Ley núm. 26 de 12 de abril de 1941, secs. 551 a 556 de este título."

Sec. 682. *Venta de Parcelas*

"En el caso de aquellos usufructuarios que actualmente poseen una parcela, bien sea ésta rural o urbana, y que no hayan violado lo dispuesto en la sec. 553 de este título, el Secretario de Agricultura les venderá, si éstos

Silva Ramos sobre la Parcela Núm. 209-A, constante de 379.26 metros cuadrados, libre de gravámenes, que es parte de la comunidad rural *Guardarraya* del barrio del mismo nombre del municipio de Patillas. Dicha entrega de título se perfeccionó mediante venta formalizada en la citada escritura "por el convenido y ajustado precio de un dólar ($1.00)." El comprador recurrente era para la fecha del otorgamiento casado con Crucita Rivera Berríos, pero ésta no compareció como otorgante en la escritura.

El Registrador devolvió el documento sin practicar anotación alguna por faltar el consentimiento por escrito de la esposa, citando en su nota como fundamentos de denegación los Arts. 91, 93, 1308 y 1313 del Código Civil según enmendados por Ley Núm. 51 aprobada el 21 de mayo de 1976 y nuestra decisión en *Aguilú v. Sociedad de Gananciales*, 106 D.P.R. 652 (1977).

---

así lo solicitan, la parcela por la suma de un (1) dólar, siempre que cumplan con los siguientes requisitos:

"(a) Hayan construido en, o trasladado su casa a dicha parcela y residan en la misma, aunque para así hacerlo se hayan excedido del término de ciento veinte (120) días que les exigen las secs. 241 a 591 de este título.

"(b) Soliciten el título de propiedad al Secretario de Agricultura en cualquier momento durante la vigencia de este Capítulo.

"(c) Paguen, como precio de compraventa, la suma de un (1) dólar al Secretario de Hacienda al momento de otorgarse la escritura.

"(d) Para los efectos de esta sección no se considerará que viola la sec. 553 de este título el ocupante de una parcela que la usa como residencia única que, aunque para el 1ro. de junio de 1968 no tuviera título de usufructo, reunía los requisitos de la ley y de reglamento para cualificar como usufructuario, o si para esa misma fecha había adquirido, por cesión o traspaso, una parcela o parte de una parcela de un usufructuario que tiene con él lazos de consanguinidad o afinidad hasta el cuarto grado."

Por Ley Núm. 97 de 10 de junio de 1972 (3 L.P.R.A. sec. 441d(b)) la Administración de Programas Sociales del Departamento de Agricultura fue transferida, con sus funciones, programas y actividades, al Departamento de la Vivienda y se ordenó que toda referencia hecha al Secretario de Agricultura o al Departamento de Agricultura en las leyes que regulan la Administración de Programas Sociales, se entenderá como hecha al Secretario de la Vivienda.

Los citados artículos del Código Civil que en su actual redacción anuncia el advenimiento de la mujer a una plena e igual participación([2]) con el hombre en el gobierno de la sociedad de gananciales y a la representación legal de su interés, ordenan:

"Artículo 91.—*Administrador de bienes conyugales.* [31 L.P.R.A. sec. 284]

Ambos cónyuges serán los administradores de los bienes de la sociedad conyugal, salvo estipulación en contrario, en cuyo caso uno de los cónyuges otorgará mandato para que el otro actúe como administrador de la sociedad.

Las compras que con dichos bienes haga cualquiera de los cónyuges serán válidas cuando se refieran a cosas destinadas al uso de la familia o personales de acuerdo con la posición social y económica de ésta. Disponiéndose que cualquiera de los cónyuges podrá efectuar dichas compras en efectivo o a crédito.

Enajenación de bienes.—Los bienes inmuebles de la sociedad conyugal no podrán ser enajenados o gravados, bajo pena de nulidad, sino mediante el consentimiento escrito de ambos cónyuges. Nada de lo antes dispuesto se interpretará a los efectos de limitar la libertad de los futuros cónyuges de otorgar capitulaciones matrimoniales."

"Artículo 93.—*Representante de la sociedad conyugal.* [31 L.P.R.A. sec. 286]

Salvo lo dispuesto en el Artículo 91, cualquiera de los cónyuges podrá representar legalmente a la sociedad conyugal. Cualquier acto de administración unilateral de uno de los cónyuges obligará a la sociedad legal de gananciales, y se presumirá válido a todos los efectos legales."

"Artículo 1308.—*Obligaciones a cargo de la sociedad de gananciales.* [31 L.P.R.A. sec. 3661]

Serán de cargo de la sociedad de gananciales:

1. Todas las deudas y obligaciones contraídas durante el matrimonio por cualquiera de los cónyuges.

2. Los atrasos o créditos devengados durante el matrimonio,

---

([2])*L. Dershowitz & Co., Inc.* v. *Registrador,* 105 D.P.R. 267 (1976).

de las obligaciones a que estuviesen afectos así los bienes propios de los cónyuges como los gananciales.

3. Las reparaciones menores o de mera conservación hechas durante el matrimonio en los bienes peculiares de cualquiera de los cónyuges. Las reparaciones mayores no serán de cargo de la sociedad.

4. Las reparaciones mayores o menores de los bienes gananciales.

5. El sostenimiento de la familia y la educación de los hijos comunes y de cualquiera de los cónyuges.

6. Los préstamos personales en que incurra cualquiera de los cónyuges."

"Artículo 1313.—*Consentimiento de ambos esposos.* [31 L.P.R.A. sec. 3672]

No obstante lo dispuesto en el Artículo 91, ninguno de los dos podrá donar, enajenar, ni obligar a título oneroso, los bienes muebles e inmuebles de la sociedad de gananciales, sin el consentimiento escrito del otro cónyuge, excepto las cosas destinadas al uso de la familia o personales de acuerdo con la posición social o económica de ambos cónyuges.

Todo acto de disposición o administración que sobre dichos bienes haga cualquiera de los cónyuges en contravención a este artículo, y los demás dispuestos en este Código, no perjudicará al otro cónyuge ni a sus herederos.

El cónyuge que se dedicare al comercio, industria, o profesión podrá adquirir o disponer de los bienes muebles dedicados a esos fines, por justa causa, sin el consentimiento del otro cónyuge. No obstante, será responsable por los daños y perjuicios que pudiere ocasionar por dichos actos a la sociedad legal de gananciales. Esta acción se ejercitará exclusivamente en el momento de la disolución de la sociedad legal de gananciales."

■ El Registrador descansa más allá del *ratio decidendi* en nuestra expresión en *Aguilú,* supra: "Ahora son actos de disposición tanto la compra como la venta de bienes inmuebles para los cuales se requiere el consentimiento por escrito de ambos cónyuges." El rigor de esta expresión está atemperado por lo que dos párrafos más adelante se destaca en la propia decisión como fin y propósito de esta legislación, el de proteger

a un cónyuge del mal juicio y error de discreción del otro, con el siguiente razonamiento: "Mal se llevaría a cabo la filosofía moderna de igualdad si so color de llamarse acto de administración se dejara a cualquiera de los cónyuges adquirir bienes inmuebles para la sociedad a riesgo de dilapidar el capital ganancial." Se trataba en *Aguilú* de la compra de una finca rústica, a la cual se opuso la esposa, y por las apreciables diferencias en objeto, precio y causa original, entre aquél y el caso de autos, no resulta un precedente preciso.

Hay dos razones por las que no se requería el consentimiento de la esposa del comprador de la parcela: una fundada en el texto mismo del transcrito articulado del Código Civil; y la otra, en la naturaleza especial del contrato mediante el cual se otorga título de propiedad a un parcelero.

## I

 Diferimos del ilustrado Registrador en cuanto caracteriza el requisito de concurrencia de la esposa en la escritura de compraventa como uno "absoluto" (³) en defecto del cual se produce la nulidad del negocio jurídico. Hay una importante excepción en estos artículos del Código Civil regulativos de la facultad para disponer tanto de bienes inmuebles como muebles de la sociedad de gananciales, incorporada al Art. 91 cuando dice: "[l]as compras que con dichos bienes [de la sociedad conyugal] haga cualquiera de los cónyuges serán válidas cuando se refieran a cosas destinadas al uso de la familia o personales de acuerdo con la posición social y económica de ésta" cuyas compras podrá efectuar cualquiera de los cónyuges en efectivo o a crédito; y al Art. 1313 en su prohibición de que "ninguno de los dos podrá donar, enajenar, ni obligar a título oneroso, los bienes muebles e inmuebles de la sociedad de gananciales, sin el consentimiento

---

(³) En el Derecho, que es arte y ciencia a la vez, no confrontamos la abstracción de lo absoluto. En física el único factor constante que se aproxima a absoluto es la velocidad de la luz: 186,000 millas por segundo.

escrito del otro cónyuge, *excepto* las cosas destinadas al uso de la familia o personales de acuerdo con la posición social o económica de ambos cónyuges." (Bastardillas nuestras.) En la cláusula Cuarta de la escritura presentada al Registro el Secretario de la Vivienda hace constar que el comprador de la parcela ha cumplido con todos los requisitos exigidos por la Ley Núm. 35 de 14 de junio de 1969; con el Art. 76 de la Ley Núm. 26 de 12 de abril de 1941 según enmendada, y con el Reglamento para otorgar títulos de propiedad a los beneficiarios del Título V de la Ley de Tierras, según dispuesto por la Ley Núm. 35 citada, aprobado por el Gobernador el 30 de septiembre de 1969. Esto equivale a certificar que "la posición social y económica" del recurrente es la de un agregado(4) *bona fide*, esto es, un jefe de familia que reside en la zona rural, cuyo hogar se levanta sobre terrenos pertenecientes a otra persona o a una entidad privada o pública, cuyo único medio de vida es el trabajo a jornal, y que no posee terrenos en calidad de dueño y que ha sido elegido para este beneficio porque a juicio de la Administración de Programas Sociales no tiene suficiente capital ni ingresos que le permitan adquirir tierras sin la ayuda de la Administración. Reglamento citado (28 R.&R.P.R. sec. 553–1).

■ La enmienda al Art. 1313 del Código Civil prohibiendo la enajenación o gravamen, tanto de bienes inmuebles como muebles de la sociedad conyugal sin mediar el consentimiento escrito de ambos cónyuges tiene el propósito de impedir, cuando de comprar se trata, que uno de ellos distraiga

---

(4) "Por el término de 'agregado' se entenderá a los fines de esta Ley, todo jefe de familia y aquellas personas solas que cualifiquen que residan en la zona rural, cuyo hogar se encuentre en casa y terreno ajenos o en casa propia levantada en terreno ajeno, cuyo único medio de vida sea el trabajo a jornal devengado en faenas agrícolas, y que no posea terreno en calidad de dueño. No se podrá otorgar más de un predio a un jefe de familia y aquellas personas solas que cualifiquen ni éstos podrán traspasarlo sin el consentimiento de la Administración de Programas Sociales bajo el reglamento que la Administración de Programas Sociales apruebe." Art. 78, Ley Núm. 26 de 12 de abril de 1941, *supra* (28 L.P.R.A. sec. 555).

una parte sustancial del acervo común en un mal negocio o acepte condiciones onerosas que comprometan la estabilidad económica de la sociedad; aparte del reconocido fin de enaltecer la personalidad de la mujer como partícipe a plenitud en las decisiones que afectan la sociedad de gananciales.

La venta de la parcela al recurrente se hizo libre de gravámenes, pero el Registrador señala como posible fuente de obligaciones que requieren consentimiento de la esposa la advertencia en la citada cláusula Cuarta de la escritura en cuanto a haber el comprador recibido orientación "sobre sus derechos, obligaciones y responsabilidades como dueño de la parcela que por este título adquiere." Esto no constituye carga ni obligación onerosa para la sociedad; se trata de las normas de orden interno que rigen la convivencia en la comunidad rural, como la prohibición de cortar o derribar árboles, mover o en modo alguno alterar los puntos de colindancia, la permuta de parcelas sin consentimiento de la Administración o construir más de una vivienda por parcela; y la reglamentación sencilla relativa a construcción, ubicación y limpieza de letrinas y disposición de basuras y desperdicios. 28 R.&R.P.R. secs. 553–1 a 554–9. El precio de $1.00, inferior a muchos gastos corrientes de consumo del vivir cotidiano; y el provecho que para la familia implica la adquisición de un hogar, coloca la adquisición de esta parcela claramente dentro de la *excepción* reconocida en los Arts. 91 y 1313 para los actos administrativos que tienen por objeto aquellas "cosas destinadas al uso de la familia o personales de acuerdo con la posición social o económica de ambos cónyuges."

## II

El contrato mediante el cual el recurrente adquirió por un dólar ($1.00) título de dominio de una parcela de 379.26 m/c donde enclavar el hogar de su familia, no puede ser tipificado como uno de compraventa ortodoxa en que uno de los contratantes se obliga a entregar una cosa determi-

nada y el otro a pagar por ella un precio cierto, en dinero o signo que lo represente. (Art. 1334 C.C.) El dólar pagado por el adquirente de la parcela no es precio real, sino nominal y simbólico. Más que precio, es el vehículo de realización de la política pública del Gobierno de Puerto Rico dirigida a propiciar la adquisición de una vivienda propia para cada familia, que en el plan de comunidades rurales tiene un temprano anuncio cuando se ordena a la Administración de Programas Sociales que ceda parcelas a los agregados en *usufructo gratuito* (Art. 76, Ley Núm. 26 de 12 de abril de 1941 —28 L.P.R.A. sec. 553) y evoluciona hacia la concesión de título de propiedad a usufructuarios u ocupantes de parcelas ordenado por Ley Núm. 35 de 14 de junio de 1969 (28 L.P.R.A. sec. 681 y ss.) precedida por la siguiente

"Exposición de Motivos

"Puerto Rico se ha estado confrontando al problema social que representan las miles de familias que viven en terreno ajeno. En virtud de las disposiciones del Título V de la Ley de Tierras, se han establecido comunidades rurales en todo Puerto Rico, en las que se le ha provisto de parcelas y solares en usufructo perpetuo a cerca de 75,000 de estas familias. Quedan aún alrededor de 18,000 familias que aguardan el día en que puedan disfrutar de los beneficios de este programa de vasto alcance social. Por esta razón, es de primordial importancia que continúe en pleno desarrollo este programa hasta la total eliminación del problema que le dio origen. Por otro lado, el éxito del programa hace deseable que las familias que han disfrutado las parcelas en usufructo perpetuo adquieran título de las mismas y que aquellas que las adquieran en el futuro en tal condición, puedan optar por retenerlas en usufructo perpetuo o adquirir el pleno dominio de las mismas mediante título de propiedad." Leyes de Puerto Rico, Sesión Ordinaria de 1969, Edición Equity, págs. 60–61.

El precio nominal no altera el verdadero carácter gratuito de este otorgamiento de título de propiedad. El contrato, más que a intereses privados, sirve a la implementación de un remedio social. El recurrente no es, por tanto, el

comprador que para disponer del dólar ganancial necesita el consentimiento escrito de su cónyuge, sino el beneficiario de un programa social al que como jefe de familia y coadministrador responsable de la sociedad conyugal, se adhiere mediante dicha erogación mínima en provecho del grupo familiar. La inscripción de este título en el Registro es la concreción final, en su aspecto documental-jurídico, de la política pública y la intención legislativa de otorgar títulos de propiedad, a los residentes de comunidades rurales y no hay en el método seguido obstáculo técnico para la norma de facilitar acceso al Registro en favor de la creciente inmatriculación de fincas y progresiva ampliación del servicio de legitimación y publicidad que es meta del Derecho registral.

*Con estos antecedentes y fundamentos se ordenará la inscripción y la nota del Registrador será revocada.*

El Juez Presidente Señor Trías Monge concurrió en el resultado sin opinión.