HÉCTOR J. CORREA VÉLEZ, demandante y recurrido, *v.* ANTONIO CARRASQUILLO, demandado y recurrente.

*Número:* R-73-238      *Resuelto:* 30 de mayo de 1975

*Orlando A. Disdier Díaz,* abogado del recurrente; *P. Roldán Figueroa* y *Frances Berríos Agosto,* abogados del recurrente.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

El 26 de junio de 1970 el demandante recurrido le tomó a préstamo al demandado recurrente la suma de veintidós mil dólares, pagadera al cabo de dos años, al 10% de interés anual. Se garantizó el préstamo con hipoteca y en la escritura correspondiente se dispuso:

"Si el deudor interesara pagar la totalidad del capital de este préstamo con anterioridad al vencimiento de su término deberá abonar además al acreedor el importe de todos los intereses con-

venidos a devengarse por el capital hasta el día de su vencimiento."

El deudor saldó la deuda el 29 de junio de 1971 y pagó dos mil doscientos dólares adicionales en calidad de intereses a tenor con la cláusula transcrita. Aproximadamente once meses más tarde el deudor demandó al recurrente en el Tribunal de Distrito, alegando la nulidad de la cláusula relativa al cobro de intereses en caso de pago anticipado. El Tribunal de Distrito decretó que la cláusula es nula y ordenó la devolución de los dos mil doscientos dólares, los que consideró intereses usurarios. El Tribunal Superior confirmó la sentencia. Acordamos revisar.

## I

Analicemos primeramente estos hechos a la luz de nuestra legislación concerniente a la usura y a las tasas legales de intereses. Varias disposiciones rigen esta zona de nuestro derecho, entre las que se cuentan los Art. 1649 y siguientes del Código Civil, 31 L.P.R.A. sec. 4591 *et seq.*, según afectados por la Ley Núm. 36 de 18 de junio de 1969 y el reglamento adoptado a su amparo, 33 R.&R.P.R. sec. 1754–1; y la Ley Núm. 92 de 6 de mayo de 1938, incorporada a nuestro antiguo Código Penal, 33 L.P.R.A. sec. 1751 *et seq.*

La tasa de 10% acordada era legal en 1970. 33 R.&R.P.R. sec. 1754–1. El problema consiste en determinar si la cláusula de indemnización por el pago anticipado de la deuda—y el pago que actualmente se hizo—convirtieron en usurario el préstamo. A tales efectos conviene señalar que las disposiciones de ley citadas, aunque parte de ellas se han incorporado a nuestro Código Civil, se fundan en el patrón general estadounidense. Lowell, *A Current Analysis of the Usury Laws: A National View*, 8 San Diego L. Rev. 193 (1971).

El derecho norteamericano establece con toda claridad la validez de cláusulas como la que nos ocupa. Se expresa en 14

914

Williston, *On Contracts*, 3ª ed., 1972, sec. 1694(A), a la pág. 769:

"No constituye usura el hecho que un deudor acuerde de antemano que, en caso de pago del préstamo antes de su vencimiento, él deberá satisfacerle al acreedor los intereses por el plazo completo del préstamo o pagarle una prima." (Traducción nuestra.)

Al mismo efecto: 6A Corbin, *On Contracts*, 1962, sec. 1505, pág. 697; Lowell, *supra*, 209 *et seq.*, y la jurisprudencia citada en dichos escritos.

El tratamiento español del tema de la usura es radicalmente distinto. La fuente principal es la Ley de la Represión de la Usura o Ley Azcárate de 23 de julio de 1908, la cual no fija una tasa máxima de interés, sino que deja a la discreción judicial la determinación de si un préstamo es o no usurario mediante el examen de varios factores, entre los que se cuentan la fijación de un interés mayor que el acostumbrado, la situación angustiosa del prestatario y el carácter de la transacción, si comercial o civil. Véanse: Vizcarro, *El Préstamo Usurario*, Colección Nereo, Barcelona, 1963, pág. 30 *et seq.;* Sentencia de 15 de diciembre de 1965 (Esp.), 223 Rev. Gen. de Leg. y Jur. 759 (1967). Existe legislación en España para fijar la tasa máxima en préstamos civiles, pero que no ha afectado la Ley Azcárate y el modo básico nacional de enfocar el problema de la usura. Quintano Ripolles, *Usura Civil y Usura Penal*, 49 Rev. de Derecho Privado 272, 274 (1965).

■ Dado el origen de nuestras leyes de usura y la aplicabilidad de la doctrina general estadounidense [1] a las condiciones locales del momento, resolvemos que la existencia de una cláusula como la presente de indemnización por pago anticipado no torna en usurario un contrato de préstamo.

---

[1] En la segunda parte de esta opinión discutimos, desde otro punto de vista, desarrollos recientes en Estados Unidos en este campo.

## II

La nulidad o validez de la cláusula en cuestión debe examinarse también desde la vertiente del Art. 1080 de nuestro Código Civil, 31 L.P.R.A. sec. 3063, equivalente al 1127 del Código Civil Español. El tejido de nuestro derecho se compone a veces de hilos variados, provenientes de diversos sistemas jurídicos. El problema bajo estudio es un ejemplo de ello.

Provee el Art. 1080:

"Siempre que en las obligaciones se designa un término, se presume establecido en beneficio de acreedor y deudor, a no ser que del tenor de aquéllas o de otras circunstancias resultara haberse puesto en favor del uno o del otro."

En el derecho español, el plazo en el préstamo a interés se entiende establecido generalmente tanto en beneficio del acreedor como del deudor, ya que "el prestamista coloca su capital con la esperanza legítima de obtener una ganancia determinada de la cual se vería privado a voluntad del deudor desde el instante en que éste pudiera lícitamente devolverle lo prestado antes del término convenido." Sentencia del 1 de marzo de 1887 (Esp.). De ahí que la doctrina usualmente establezca, aunque no es uniforme, que en el préstamo a interés el deudor no puede pagar antes de cumplirse el plazo establecido en la obligación. 19 Scaevola, *Código Civil*, 2ª ed., 1957, pág. 805; Manresa, *Comentarios al Código Civil Español*, 6ª ed., t. VIII, vol. 1, pág. 449; Puig Brutau, *Fundamentos de Derecho Civil*, 1959, t. I, vol. II, pág. 145. Diez-Picazo, *El Pago Anticipado*, 28 Revista de Derecho Mercantil, págs. 37, 47, 89-91 (1959).

La jurisprudencia y los tratadistas españoles, sin embargo, no comentan usualmente el problema de la legalidad de exigir de antemano determinada prima a cambio de permitir el pago por anticipado del capital. Véanse: Alvarez Puza, *Extinción de las Obligaciones: El Pago* (Arts. 1156 a 1171), Colección Nereo, Barcelona, 1962; Beltrán de Heredia, *Cumplimiento de las Obligaciones*, Ed. Rev. de Derecho Privado, Madrid,

1956; Diez Picazo, *supra;* Puig Peña, no obstante, asume la posición de que el deudor debe tener derecho a pagar si le abona al acreedor todos los quebrantos que puedan deducirse de su deseo de pago anticipado. Puig Peña, *Compendio de Derecho Civil Español,* 1966, t. III, vol. 2, pág. 795. Esta preocupación que evidencia el criterio de Puig Peña, a la que aludiremos dentro de breve, está hallando eco en algunos sectores del Derecho Civil, del Derecho Norteamericano y del Derecho Puertorriqueño, aunque existe gran diversidad de enfoques.

En Quebec, del otro lado, cuyas disposiciones legales sobre este asunto derivan del Código Napoleón, se ha resuelto por jurisprudencia que la exigencia de una prima por el pago anticipado de un préstamo a interés es enteramente válida, así como que el asunto no se rige por la legislación relativa a las tasas máximas de interés. Faribault, *Traité de Droit Civil de Québec,* 1952, vol. 13, pág. 207. Compárese: Mazeaud et Mazeaud, *Lecons de Droit Civil,* Paris, 1956, vol. 12, sec. 916.

En algunas jurisdicciones de Derecho Civil—y aquí comenzamos a mencionar algunos desarrollos análogos a los que aparentemente inspiran la opinión de Puig Peña—se ha legislado expresamente para alterar esta regla. Despunta cierta tendencia en distintos países a ofrecerle mayor protección al deudor. En Bélgica, por ejemplo, es lícita la estipulación de una indemnización por reempleo del capital en caso de pago anticipado, pero el Art. 1907 *bis* del Código Civil prohíbe que la prima exceda a una cantidad equivalente a seis meses de intereses, calculados a base de la suma total prestada. De Page, *Droit Civil Belge,* t. 5, Bruxelles, 1952, pág. 170.

En Estados Unidos se ha aprobado gran diversidad de leyes y reglamentos sobre este asunto. El reglamento del Banco Federal de Préstamos sobre la Vivienda limita también a seis meses la indemnización por pago anticipado y exige pacto previo para tener derecho a cobrar prima alguna. *Federal Home Loan Bank Board Regulations,* 12 C.F.R. sec. 546.6-

12(b) (1971). En el caso de ciertos otros préstamos acreedores a la garantía gubernamental, como los contraídos por veteranos bajo la legislación al efecto, no puede cobrarse indemnización alguna por el pago adelantado. 38 C.F.R. sec. 36.4310 (1971). En otros casos se provee una tabla de primas reducidas, como sucede con los préstamos de la F.H.A. 24 C.F.R. sec. 207.253(a) (1971). Para un estudio de la interesante situación en California y citas sobre la legislación en ciertos estados, revísese: Bonanno, J. F., *Due on Sale and Prepayment Clauses in Real Estate Financing in California in Times of Fluctuating Interest Rates—Legal Issues and Alternatives*, 6 Univ. of San Francisco L. Rev. 267 (1972).

La cuestión ha preocupado también a nuestra Asamblea Legislativa. En la Ley de Préstamos Personales Pequeños de 28 de junio de 1965 se dispuso, 10 L.P.R.A. sec. 954(2)(d), que en caso de pago por anticipado total se deberá reembolsar al deudor "la porción del cargo correspondiente a los plazos no vencidos."

No es descartable que este Tribunal se convenza en ocasión apropiada, en que el expediente contenga datos económicos adecuados sobre el efecto de la decisión que se adopte, de la posibilidad de considerar la cláusula que nos ocupa como una cláusula penal, a pesar de las aparentes dificultades que presenta el Art. 1108 de nuestro Código Civil, y que aplique a estos casos el principio de la moderación de la pena. *Rochester Capital Leasing Corp.* v. *Williams International Ltd.*, opinión del 23 de diciembre de 1974, Ref. Col. Abog. 1974-166. Una variante de esta solución se ha recomendado para Estados Unidos. Comment, *Secured Real Estate Loan Prepayment and the Prepayment Penalty*, 51 Calif. L. Rev. 923 (1963).

■ El problema bajo estudio abarca, no obstante, situaciones muy variadas, a la par que exige soluciones claramente anticipables que propicien en lo posible la estabilidad en este género de transacciones. Estimamos que la tendencia clara en otras jurisdicciones es definitivamente hacia ofrecer mayor

protección a los deudores, especialmente en tiempos de grandes fluctuaciones en la tasa de interés. Simpatizamos con dicha tendencia, pero la solución del problema se adapta más, en ausencia de un récord adecuado ante nos, a la flexibilidad que provee el proceso legislativo. Entre las dificultades que presenta intentar lograr por la vía adjudicativa el debido equilibrio de intereses en un campo tan delicado como éste se encuentra el problema de la retroactividad. ¿Puede o debe hacerse retroactiva una decisión en un caso como el presente? ¿Bajo qué principio de ley puede declararse una retroactividad limitada en la presente situación de hechos, especialmente cuando se trata, como se trata aquí de un problema novel de este foro?

A la luz de estas consideraciones, estimamos que el proceso legislativo debe tener la oportunidad preferente de investigar y resolver este orden de problemas. Resolvemos, por tanto, que en las circunstancias presentes y a la luz de los hechos concretos que esta causa encierra tampoco existe base en nuestro Código Civil para declarar nula en este caso la cláusula de indemnización por pago anticipado de la deuda.

*Se revocará la sentencia del tribunal de instancia.*

El Juez Asociado, Señor Martín, concurre en el resultado. Los Jueces Asociados, Señores Díaz Cruz y Negrón García, disienten en opiniones separadas.

—O—

Opinión disidente del Juez Asociado Señor Díaz Cruz.

San Juan, Puerto Rico, a 30 de mayo de 1975

Disiento. Considero inmoral y contraria al orden público en principio la cláusula que impone al deudor que desea saldar la hipoteca antes de vencimiento, la condición de pagar *todos* los intereses pactados hasta la fecha de vencimiento. Sin embargo, no ha de adoptarse una regla fija aprobando o re-

chazando dicho pacto. En una hipoteca de pequeña cuantía y corto plazo la condición no parecería excesivamente onerosa y opresiva.

Si el único reclamo de legitimidad de esta cláusula es proteger la inversión del prestamista que de recibir su dinero devuelto antes de tiempo ha de gestionar otra colocación productiva para el mismo, una penalidad consistente en el abono de intereses por un número de meses bastaría para proteger la "libra de carne" del acreedor. En una sociedad que usa el crédito hasta el punto en que se diluye el horizonte, es fácil colocar otra vez el dinero pagado. (1) Resultaría entonces que habiendo el prestamista cobrado intereses por un año no cumplido, al reinvertir prontamente su dinero estaría percibiendo interés adicional por el mismo período lo que en simple aritmética equivale a autorizar el doble del interés legal. En este caso, en vez del 10% (si se mantiene el tipo legal) podrá recibir el 20% anual por su dinero.

Los intereses no han sido, en el penoso devenir de nuestra civilización, motivo de satisfacción ni orgullo. En gran medida han estado ligados a la angustia, la desesperación y el fracaso. Sabido es que la voluntariedad de la hipoteca en muchos casos es un eufemismo. El deudor se entrega a su acreedor con la misma buena voluntad que el poderoso toro sigue a quien tira del anillo que perfora su nariz.

Si reconociendo esta desigualdad en la contratación, en los albores de nuestro derecho inmobiliario se prohibió el pacto comisorio (Art. 1780 del Código Civil), una sociedad iluminada por principios de justicia social no ha de abandonar aquel primer propósito de tender un alivio al deudor. La otra alternativa sería aferrarnos a lo que resolvió el Tribunal Supremo de España en el año "terrible" de 1887, de infame recordación en nuestra patria, cuya sentencia de 1° de marzo se cita como autoridad en la ponencia.

---

(1) Hasta los bancos del país pagan buenos intereses por imposiciones a plazo fijo, sin contar las atractivas ofertas de los europeos.

Habrá situaciones en que el tipo de inversión y la capacidad económica del deudor toleren una penalidad mayor por resolver prematuramente el pacto de intereses. No ha de ser esto objeto de regla de palo impuesta por legislación sino encomienda de las cortes que facultadas por el Art. 1108 del Código Civil (31 L.P.R.A. sec. 3133) podrán "modificar equitativamente la pena" pues ¿qué otra cosa es el pago de intereses por dinero no usado?

Contrario a lo aseverado en la opinión circulada en tono de frustración, el Código Civil siempre tiene un remedio contra la inequidad y el exceso. Su Art. 1207 (31 L.P.R.A. sec. 3372) proscribe la cláusula de indemnización total cuando resulte contraria a la moral y al orden público.

· Modificaría la sentencia revisada reduciendo a tres meses de intereses la indemnización por prematuridad.

—O—

Voto disidente del Juez Asociado Señor Negrón García.

San Juan, Puerto Rico, a 30 de mayo de 1975

Disiento respetuosamente de la ilustrada opinión del Tribunal que basada en un peregrinaje del derecho foráneo sanciona hoy el que un acreedor hipotecario cobre a su deudor un interés usurero de aproximadamente 20% anual convalidando una cláusula de indemnización por el pago anticipado de la deuda, bajo la tésis del ". . . origen de nuestras leyes de usura y la aplicabilidad de la doctrina general estadounidense a las condiciones locales del momento, . . . ."

No puedo posponer para otra ocasión el expresar mi sentir y rechazo a la injusticia que esta decisión conlleva, la cual libera del rigor de la ley contra prácticas usurarias[1] el cobro de interés a un tipo ilegal, dejando a los deudores puertorriqueños a merced de la fuerza del capital hasta que el proceso legislativo investigue y resuelva.

---

[1] Para un historial excelente de la génesis de la legislación contra la usura, consúltese *Monclova* v. *Financial Credit Corp.*, 83 D.P.R. 770 (1961).

Creo que la norma de ley establecida por la Asamblea Legislativa de Puerto Rico desde principios de siglo, incorporada en el Art. 1652 de nuestro Código Civil, contiene la solución jurídica del caso. En lo pertinente dispone:

"Excepto como queda autorizado por la sección anterior [la cual exime los préstamos de prestamistas matriculados, bonos y contratos sobre préstamos a la gruesa y riesgo marítimo], ninguna persona podrá *exigir o recibir,* directa o *indirectamente,* dinero o mercancías, *a un tipo de interés mayor por el préstamo* o la prórroga del préstamo de algún dinero, que el tipo fijado. . . .

Los derechos definidos en esta sección *no son renunciables."* (31 L.P.R.A. sec. 4594)—énfasis suplido.

Estimo que la prohibición que establece la precitada disposición constituye la norma general extensiva a una cláusula de indemnización por pago anticipado de la deuda, que no es otra cosa que un subterfugio para exigir y recibir indirectamente el pago de un interés usurero vedado directamente. Cualquier interpretación en contrario violenta no sólo los términos literales del precepto sino su sentido espiritual y moral.

No entra en juego ni milita en contra de la anterior conclusión el Art. 1080 del Código Civil (31 L.P.R.A. sec. 3063) —recogedor de la norma sobre beneficio del término designado en las obligaciones—pues la misma es de carácter supletoria y no puede tener el alcance de enervar la prohibición de préstamos usureros que el legislador ha reconocido como de naturaleza irrenunciable. Tal interpretación anula el propósito y escudo protector de la ley anti-usura, convirtiéndola en una espada mortal para la opresión.

Finalmente considero de rigor señalar:

Para lograr estabilidad y no cerrar las fuentes crediticias ante las fluctuaciones del mercado de dinero se legisló previsoramente un mecanismo flexible que permite atemperar el rigor de la ley contra la usura—Ley Núm. 36 de 13 de junio de 1969—; su creación responde a un enfoque realista de la dinámica y variante economía y no a derogar la ley contra la

usura. Por ello la ratio de la decisión no puede inspirarse en la preocupación legítima, que también comparto, de *no cerrar las puertas*, al crédito en efectivo.

En la alternativa, la deferencia al legislador que propugna la opinión, al igual que el silencio, obscuridad o insuficiencia de una ley, nunca puede ser razón para no emitir este Tribunal el fallo apropiado y justo, conforme la equidad. Art. 7, Código Civil, (31 L.P.R.A. sec. 7). Las doctrinas y principios proclamados por los tribunales europeos o de los Estados Unidos, y las posiciones de insignes comentaristas, tienen únicamente valor ilustrativo y persuasivo. Sin embaro, no puedo atribuirle, en éste ni en ningún caso, valor de precedente o de derecho supletorio cuando confligen con nuestra tradición jurídica, nuestro modo de vivir como pueblo o chocan con el sentimiento de justicia que anima a todo miembro de la judicatura puertorriqueña. (²)

Bajo cualesquiera de las normas de hermenéutica legal—sentido literal, espiritual o de equidad—el interés cobrado por el demandado recurrente viola la ley de usura ante lo cual confirmaría los fallos de las dos salas de instancia que intervinieron en el caso.

---

(²) Como alternativas jurídicas viables para satisfacer una dosis mínima de justicia, el Tribunal podría convalidar, limitado a unos plazos breves y razonables, una cláusula de indemnización por pago anticipado—sujeto a que el interés total no trascienda el máximo fijado por la ley—o darle efecto prospectivo a la norma. *Monclova,* supra, pág. 790.