FRANK J. ZARELLI, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE SAN JUAN, SECCIÓN OCTAVA, recurrido.

*Número:* CE-88-262     *Resuelto:* 30 de junio de 1989

*Alberto E. Lugo Janer*, abogado del recurrente; la Registradora recurrida compareció por escrito.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

Este recurso gubernativo nos permite contestar si un poder general otorgado en Estados Unidos por un cónyuge a favor de otro constituye el mandato expreso por escrito que requieren los Arts. 1604 y 1313 del Código Civil, 31 L.P.R.A. secs. 4425 y 3672. Contestamos en la negativa.

# I

La Sra. Josephine Salemi de Zarelli, con residencia en Carolina, otorgó en la ciudad de Nueva York un poder de carácter general a su esposo Frank Zarelli. Este poder suscrito bajo el *statutory short form*(1) y al amparo de las leyes del estado de Nueva York, N.Y. *General Obligations Law* Secs. 5-1501–5-1602 (McKinney 1989), permite al poderhabiente realizar cualquier transacción sobre cualquier asunto o reclamación del poderdante. El señor Zarelli protocolizó el poder otorgado por su esposa conforme los requisitos de la

---

(1) Por la importancia que tiene el poder objeto de controversia, en lo pertinente, lo transcribimos:

"Notice: The powers granted by this document are broad and sweeping. They are defined in New York General Obligations Law, Article 5, Title 15, sections 5-1502A through 5-1503, which expressly permits the use of any other or different form of power of attorney desired by the parties concerned.

*"Know All Men by These Presents*, which are intended to constitute a GENERAL POWER OF ATTORNEY pursuant to Article 5, Title 15 of the New York General Obligations Law:

"That I (insert name and address of the principal) JOSEPHINE ZARELLI also known as JOSEPHINE SALEMI ZARELLI residing at 64C Pine Grove Condominium, Isla Verde, Puerto Rico.

"do hereby appoint (insert name and address of the agent, or each agent, if more than one is designated) FRANK ZARELLI, residing at 64C Pine Grove Condominium, Isla Verde, Puerto Rico.

"my attorney(s)-in-fact TO ACT

"(a)  If more than one agent is designated and the principal wishes each agent alone to be able to exercise the power conferred, insert in this blank the word 'severally'. Failure to make any insertion or the insertion of the word 'jointly' will require the agents to act jointly.

"In my name, place and stead in any way which I myself could do, if I were personally present, with respect to the following matters as each of them is defined in Title 15 of Article 5 of the New York General Obligations Law to the extent that I am permitted by law to act through an agent:

"[Strike out and initial in the opposite box any one or more of the subdivisions as to which the principal does NOT desire to give the agent authority. Such elimination of any one or more of subdivisions (A) to (L), inclusive, shall automatically constitute an elimination also of subdivision (M).]

"To strike out any subdivision the principal must draw a line through the text of that subdivision AND write his initials in the box opposite.

548

Ley Notarial de Puerto Rico en su Art. 38 (4 L.P.R.A. sec. 2056).

En la escritura de compraventa del inmueble objeto de controversia se hizo constar que el señor Zarelli tenía un poder otorgado por su esposa que lo facultaba a vender el inmueble ganancial. Finalizados los trámites de la compraventa, los nuevos adquirientes, a través del notario que había otorgado la escritura de compraventa y la protocolización del poder, acudieron al Registro de la Propiedad, Sección Octava de San Juan, a inscribir la compraventa efectuada. Ya para esta época la señora Salemi había muerto. La Hon. Registradora Lcda. Carmen Rocafort denegó la inscripción porque del poder acompañado no surgía el mandato expreso necesario para vender el inmueble según requerido por los Arts. 1313 y 1604 del Código Civil, *supra*.[2] Apéndice 1. El notario

---

"(A) real estate transactions; ....................................................... [    ]
"(B) chattel and goods transactions; .............................................. [    ]
"(C) bond, share and commodity transactions; ............................. [    ]
"(D) banking transactions; ............................................................. [    ]
"(E) business operating transactions; ........................................... [    ]
"(F) insurance transactions; .......................................................... [    ]
"(G) estate transactions; ............................................................... [    ]
"(H) claims and litigation; ............................................................ [    ]
"(I) personal relationships and affairs; ....................................... [    ]
"(J) benefits from military service; .............................................. [    ]
"(K) records, reports and statements; ......................................... [    ]
"(L) full and unqualified authority to my attorney(s)-in-fact to delegate any or all of the foregoing powers to any person or persons whom my attorney(s)-in-fact shall select; ....................................... [    ]
"(M) all other matters; .................................................................. [    ]"
Apéndice 10.

(2) Dichos artículos establecen:
"*Sec. 3672. Consentimiento de ambos esposos*

"No obstante lo dispuesto en la sec. 284 de este título, ninguno de los dos podrá donar, enajenar, ni obligar a título oneroso, los bienes muebles e inmuebles de la sociedad de gananciales, sin el consentimiento escrito del otro cónyuge, excepto las cosas destinadas al uso de la familia o personales de acuerdo con la posición social o económica de ambos cónyuges.

"Todo acto de disposición o administración que sobre dichos bienes haga cualquiera de los cónyuges en contravención a esta sección, y los demás dispuestos en este título, no perjudicará al otro cónyuge ni a sus herederos.

sometió oportunamente su escrito de recalificación aduciendo, en síntesis, que el referido poder constituía el mandato expreso requerido por nuestro ordenamiento. Sus argumentos no convencieron a la Registradora recurrida y la calificación inicial se convirtió en final.

De esa calificación recurre el Sr. Frank Zarelli mediante recurso gubernativo, según permitido por la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2279. No existe controversia en cuanto a que el poder otorgado es suficiente para enajenar un inmueble en el estado de Nueva York. Únicamente nos corresponde determinar si el documento constituye el mandato expreso y requerido en Puerto Rico para la enajenación de bienes inmuebles gananciales. Resolvemos que no.

## II

█   Aunque de primera impresión este recurso aparenta plantear una controversia de derecho internacional privado,

---

"El cónyuge que se dedicare al comercio, industria, o profesión podrá adquirir o disponer de los bienes muebles dedicados a esos fines, por justa causa, sin el consentimiento del otro cónyuge. No obstante, será responsable por los daños y perjuicios que pudiere ocasionar por dichos actos a la sociedad legal de gananciales. Esta acción se ejercitará exclusivamente en el momento de la disolución de la sociedad legal de gananciales.—Código Civil, 1930, art. 1313; Mayo 21, 1976, Núm. 51, p. 143, sec. 1, ef. Mayo 21, 1976."

*"Sec. 4425. Mandato concebido en términos generales; mandato expreso; facultad de transigir*

"El mandato concebido en términos generales no comprende más que los actos de administración.

"Para transigir, enajenar, hipotecar o ejecutar cualquier otro acto de riguroso dominio se necesita mandato expreso.

"La facultad de transigir no autoriza para comprometer en árbitros o amigables componedores.—Código Civil, 1930, art. 1604."

un ligero examen de los hechos revela que el inmueble objeto de la controversia está sito en Puerto Rico. En estas circunstancias, aplica el estatuto real del Art. 10 de nuestro Código Civil, 31 L.P.R.A. sec. 10, que establece lo siguiente:

> Los bienes muebles están sujetos a la ley de la nación del propietario; *los bienes inmuebles, a las leyes del país en que están sitos.* (Énfasis suplido.)

■ Por otro lado, los documentos presentados ante el Registrador reflejan que la residencia de la poderdante era Puerto Rico. Así consta en el poder otorgado y en la escritura de compraventa. Sin embargo, como los documentos no aclaran cuál es el domicilio de la señora Salemi, no tenemos los elementos de juicio para adjudicar este extremo.[3]

■ Aun cuando la señora Salemi no estuviese domiciliada aquí y fuera solamente residente de la isla, el resultado sería el mismo. Tendríamos que aplicar las leyes locales porque el inmueble está sito aquí. *Martínez v. Vda. de Martínez*, 88 D.P.R. 443, 455 (1963); *Cabrer v. Registrador*, 113 D.P.R. 424, 431 (1982). El estatuto real aplica a todos los inmuebles sitos en la isla, independientemente del domicilio de sus dueños.[4] De manera que no existe controversia alguna de que las leyes de Puerto Rico son las aplicables al considerar la disposición del referido inmueble.

---

[3] La residencia y el domicilio son dos (2) conceptos distintos. Para ser residente de Puerto Rico se necesita estar presente en la isla por lo menos un (1) año y tener *animus revertendi* (la intención de regresar al lugar de origen). El domicilio es el lugar donde reside habitualmente una persona con el ánimo de permanecer en éste. *Prawl v. Lafita Delfín*, 100 D.P.R. 35 (1971).

[4] Tampoco es de aplicación al caso de autos lo resuelto en *Toppel v. Toppel*, 114 D.P.R. 775 (1983). No se trata de una liquidación de bienes gananciales. Además, las partes no han cuestionado la aplicación de la ley de Puerto Rico en el caso de autos.

## III

La figura moderna del poder tiene su origen en el *mandatum* romano. Éste "era un contrato consensual por el que una de las partes prometía ejecutar *gratuitamente* una comisión que le había conferido la otra parte". J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Ed. Bosch, 1978, T. II, Vol. 2, pág. 397. Desde sus inicios han existido diversas y marcadas diferencias entre el poder de representación y el mandato. Sin embargo, su evolución posterior pareció indicar una similitud entre ambas figuras. Así, en una época la doctrina y la jurisprudencia españolas consideraron el poder de representación como característica imprescindible del mandato. D. Espín Cánovas, *Manual de Derecho Civil Español*, Madrid, Ed. Rev. Der. Privado, 1983, Vol. III, pág. 657. Concluida esta etapa, un sector de la doctrina contemporánea ha reconocido nuevamente importantes diferencias. Véase L.E. Negri Pisano, *La Representación Voluntaria*, Buenos Aires, Ed. Abeledo-Perrot, 1985, págs. 33–42.

Actualmente el mandato se considera un contrato como cualquier otro, fuente de los derechos y obligaciones recíprocas de quienes lo celebraron. El poder de representación, por otro lado, es "un acto jurídico capaz de producir 'efectos reflejos' con relación a los terceros, que consisten en la posibilidad que les proporciona de realizar con el apoderado negocios jurídicos con eficacia a favor y en contra del poderdante". Negri Pisano, *op. cit.*, pág. 32. Conferir un poder de representación constituye un acto unilateral del poderdante en donde el apoderado en nada se obliga, "pero adquiere la facultad de obrar por cuenta y en nombre de aquél". M. Albaladejo, *Compendio de Derecho Civil*, 5ta ed., Barcelona, Librería Bosch, 1983, pág. 253.

Aun cuando hay un sector de la doctrina que establece que el mandato puede ser o no representativo, lo cierto

es que el mandatario, al cumplir el encargo, obra siempre por cuenta del mandante. Por lo tanto, podemos distinguir las figuras siguientes: el mero poder de representación y dos (2) tipos del mandato, el representativo indirecto y el representativo directo. Albaladejo, *op. cit.*

■ El mandato representativo indirecto es aquél donde el mandatario, a nombre propio, celebra el negocio con el tercero, quien nunca conocerá de la relación de mandato. El mandante nunca queda vinculado con el tercero, pues el mandatario carece de poder de representación. Por otro lado, en el mandato representativo directo el mandatario está facultado a representar al mandante. Es decir, el tercero conoce que el mandatario actúa por cuenta y a nombre del mandante-poderdante, convirtiéndose el mandatario, además, en apoderado.

■ El mandatario puede realizar cualquier clase de actos jurídicos autorizados por el mandante. La identificación del objeto del mandato da lugar a dos (2) clasificaciones esenciales: (1) mandato general y (2) mandato especial.

■ El mandato es general cuando el objeto del mandato no está identificado. El mandante confiere al mandatario poder para realizar la gestión o gestiones encomendadas sin especificar sobre qué bien o de qué asunto se trata. Habrá un mandato especial si el mandante ha identificado con exactitud el objeto del mandato. Así, por ejemplo, si el mandato confiere poderes para gestionar todo lo relativo a bienes localizados en un lugar específico o relativos a determinada industria o comercio del mandante, se trata de un mandato especial. Sin embargo, si el mandato no delimita la ingerencia del apoderado en el patrimonio del poderdante, como cuando el mandatario puede intervenir en cualquier asunto relacionado con la persona del mandante, estamos frente a un mandato general.

Tanto el mandato general como el especial pueden subclasificarse en atención a la gestión que se autoriza en el contrato de mandato. Si el mandatario está autorizado a efectuar un negocio determinado o una gestión particularizada, se trata de un mandato "en términos específicos". Por otro lado, si no se define en el contrato el tipo de gestión a realizarse hablamos de un mandato "en términos generales". Un mandato que autoriza al mandatario a vender determinada propiedad o la totalidad de las propiedades del mandante es un mandato en términos específicos. No obstante, si el mandante no particulariza la gestión a efectuarse, el mandato será en términos generales, aunque el objeto del contrato sea un determinado bien o asunto del mandante o la totalidad de éstos.

A modo de resumen, el mandato puede ser: (1) mandato general "en términos generales"; (2) mandato general "en términos específicos"; (3) mandato especial "en términos generales", o (4) mandato especial "en términos específicos". Si se trata de un mandato (ya sea general o especial) elaborado en términos generales, solamente dará lugar a la realización de actos de administración. Art. 1604 del Código Civil, *supra*. Si por el contrario se trata de un mandato en términos específicos, existirá una autorización para efectuar la gestión o el negocio detallado en el contrato. Para enajenar, gravar o hipotecar un bien se necesita un mandato en términos específicos. M. Albaladejo, *Derecho Civil*, Barcelona, Ed. Bosch, 1977, T. II, Vol. 2, pág. 356.

IV

El Art. 1604 del Código Civil, *supra*, establece que para realizar cualquier acto de riguroso dominio se necesita un mandato expreso. Son actos de riguroso dominio o de disposición aquellos "que afectan trascendentalmente el patrimonio de una persona", tales como gravar, enajenar o hipote-

car, etc. J.R. León, *Comentarios al Código Civil y compila-ciones forales*, Madrid, Ed. Rev. Der. Privado, 1986, T. XXI, Vol. 2, págs. 115–116.

El mandato expreso necesita contener una declaración que revele la intención de realizar un acto de disposición específica. Se requiere una manifestación clara, concreta y determinada sobre la intención del mandante. *Madera v. Metropolitan Const. Corp.*, 95 D.P.R. 637, 648 (1967). Aun así, los términos de un mandato expreso se interpretan restrictivamente para asegurar que se actúe dentro del poder otorgado:

> Ordenado por el Art. 1604 del Código Civil (31 L.P.R.A. sec. 4425), que para hipotecar, que es acto de riguroso dominio, se *necesita mandato expreso, dicho poder debe ser interpretado restrictivamente, sin que haya margen para proposiciones y reflexiones que puedan conducir a la extralimitación del apoderado y adulteración del mandato.* (Énfasis suplido y en el original.) *Banco de San Juan v. Registrador*, 103 D.P.R. 417, 422 (1975). Véanse, también: *Lokpez v. Lokpez*, 61 D.P.R. 618 (1943); *González Fagundo v. Registrador*, 47 D.P.R. 671 (1934).

En casos de disposición de inmuebles, el mandato debe ser lo suficientemente específico para que no haya lugar a dudas sobre el alcance de los actos permitidos y se pueda determinar cuáles son las participaciones o intereses sobre los bienes inmuebles afectados. Sin embargo, no es necesario describir exactamente los términos de los negocios jurídicos permitidos ni las propiedades específicas envueltas en las transacciones autorizadas. El mandato es válido si contiene una descripción general de los negocios autorizados y una referencia a si incluye bienes muebles e inmuebles. *Ribot v. Registrador*, 98 D.P.R. 497, 504 (1970). Tampoco se requiere que la expresión específica sea por escrito. *In re Feliciano Ruiz*, 117 D.P.R. 269, 277 (1986).

■ Pero en el caso particular de bienes gananciales, la definición de mandato expreso debe ser interpretada de forma compatible con el Art. 1313 del Código Civil, *supra*. En lo pertinente, dicho artículo requiere que para enajenar los bienes inmuebles de la sociedad legal de gananciales será necesario el consentimiento *escrito* de los cónyuges. Por lo tanto, un mandato expreso en este caso tendrá que ser escrito.

El requisito del consentimiento escrito para enajenar un inmueble ganancial surgió como parte de la Reforma de 1976, donde se designaron ambos cónyuges como coadministradores de la sociedad legal de gananciales. Se perseguía equiparar los derechos de la esposa con los del esposo y evitar que el marido pudiera disponer de los bienes conjuntos sin que ella lo conociera y consintiera. La jurisprudencia postreforma reiteradamente estableció la necesidad de cumplir con el requisito del consentimiento escrito para que la enajenación fuese válida. *Aguilú v. Sociedad de Gananciales*, 106 D.P.R. 652 (1977). De esta manera se cumplía con el propósito perseguido al asegurarse que la esposa conocía la transacción y estaba de acuerdo con ella.

V

Al aplicar la anterior exposición doctrinal al caso de autos, concluimos que el mandato otorgado por la señora Salemi no cumple con los requisitos de mandato expreso y escrito que requiere nuestro ordenamiento.

■ El poder otorgado por la señora Salemi es un mandato confeccionado "en términos generales", según surge de su faz, ya que autoriza al poderhabiente a manejar todos los asuntos de la poderdante y no particulariza, en el propio contrato, las gestiones o los actos autorizados. Debido a estas peculiaridades, dicho poder solamente confiere la capacidad de realizar actos de administración. El recurrente pretende

que convirtamos ese poder general en uno específico recurriendo, para la interpretación del término *real estate transactions*, a la ley de obligaciones del estado de Nueva York. Tal pretensión no puede prevalecer. De hacerlo así derrotaríamos el propósito perseguido por nuestra tradición civilista, al requerir mandato expreso y por escrito para la enajenación de bienes inmuebles gananciales. Aunque no es necesario hacer una descripción registral de la propiedad ganancial, es indispensable que el poder mencione que el inmueble estaba localizado en Puerto Rico y qué tipo de negocio se puede realizar.

▬ En vista de que aunque la poderdante falleció luego de otorgada la compraventa los herederos de ésta pueden ratificar la venta efectuada, la decisión que hoy emitimos no tiene el efecto excesivamente perjudicial que parece prever el recurrente.

Por los fundamentos expuestos anteriormente, *se confirmará la calificación recurrida.*

El Juez Asociado Señor Alonso Alonso emitió opinión concurrente y disidente, a la cual se unen el Juez Presidente Señor Pons Núñez y la Juez Asociada Señora Naveira de Rodón.

—O—

Opinión concurrente y disidente del Juez Asociado Señor Alonso Alonso, a la cual se unen el Juez Presidente Señor Pons Núñez y la Juez Asociada Señora Naveira de Rodón.

Concurro con el resultado a que llega la opinión del Tribunal de que el poder otorgado en Nueva York no cumple con nuestras normas jurídicas. No comparto, sin embargo, fundamentos conceptuales e interpretaciones del Código Civil que hace el Tribunal para llegar a dicha conclusión.

Contrario a lo expresado en la opinión del Tribunal, sostengo que se puede otorgar un poder, bien sea general o especial, que contenga una descripción general del *negocio* o *acto* a realizarse sin tener que hacer referencia al inmueble ganancial objeto de éste.

El Art. 1604 del Código Civil, 31 L.P.R.A. sec. 4425, dispone en lo pertinente que "[p]ara transigir, enajenar, hipotecar o ejecutar cualquier otro *acto* de riguroso dominio se necesita mandato *expreso*". (Énfasis suplido.) Como se desprende del Art. 1604, *supra*, lo que se requiere es que el mandato sobre el "*acto*" de dominio sea *expreso*. Ello no requiere que se identifique la exactitud del objeto o inmueble específico que se va a enajenar, transigir, hipotecar o ejecutar.

La regla de interpretación restrictiva del contenido del mandato, cuando el mismo es para conferir la facultad para realizar *actos* de riguroso dominio, es necesaria para cerrar la posibilidad de que el mandatario traspase los límites de los poderes conferidos. *Banco de San Juan v. Registrador*, 103 D.P.R. 417 (1975). Estos poderes específicos se refieren, sin embargo, a la mención de los *actos* permitidos y no al requisito de la *descripción del bien* a ejecutarse o transigirse. Por esta razón es que nuestro ordenamiento considera el que se puedan otorgar poderes sobre propiedades futuras autorizando el *acto* sin especificar el bien, pues al momento de su otorgamiento éste se desconoce.

De igual manera, en el caso de bienes gananciales el Art. 1313 del Código Civil, 31 L.P.R.A. sec. 3672, no requiere que se indique el bien específico que se autoriza a enajenar, sino que medie un consentimiento *escrito y expreso*. Cumplidos estos dos (2) requisitos sobre el consentimiento, no es necesario que se señale el bien o bienes específicos autorizados a enajenarse. *Aguilú v. Sociedad de Gananciales*, 106 D.P.R. 652 (1977); *Quintana Tirado v. Longoria*, 112 D.P.R. 276

(1982); *Silva Ramos v. Registrador*, 107 D.P.R. 240 (1978); *Padró Collado v. Espada*, 111 D.P.R. 56 (1981).

Lo expuesto en las págs. 552 y 553 de la opinión del Tribunal sobre los diferentes tipos de mandatos complica las clasificaciones existentes expuestas en el Código Civil y por los tratadistas.

La economía de Puerto Rico es una abierta. Miles son las transacciones económicas que se realizan entre personas y entidades de todos los países del mundo y entre millones de compatriotas que viven en Estados Unidos y en Puerto Rico. Además, muchas de las transacciones económicas internacionales se hacen con personas o entidades de países cuyas disposiciones sobre el mandato son de estirpe civilista similares a las nuestras, tales como: España, México, Brasil, Colombia, Costa Rica, Chile, Ecuador, El Salvador, Guatemala, Honduras, Nicaragua, Panamá, Paraguay, Perú, República Dominicana, Uruguay, Venezuela, Argentina y Canadá, para sólo mencionar algunos.

Dada esta realidad, la tendencia contemporánea es ajustar las normas jurídicas del mandato para lograr una mayor uniformidad jurídica que haga viable este tráfico económico internacional.

No debemos dar la espalda a esta realidad ni a unas disposiciones del Código Civil claras y precisas que van a tono con la misma, y hacer interpretaciones que no concuerdan con la realidad jurídica, social y económica del momento y del futuro.

Por último, me preocupa que la opinión del Tribunal no exprese si su dictamen es prospectivo a retroactivo. ¿Qué ocurre con los miles de poderes otorgados bajo las normas vigentes?