GLADYS DEL CARMEN GORBEA VALLÉS Y OTROS, recurrentes, *v.* REGISTRADOR DE LA PROPIEDAD DE SAN JUAN, recurrido.

*Número:* RG-89-833 *Resuelto:* 30 de junio de 1992

*Arturo Aponte Parés*, abogado de los recurrentes; *Registrador la Propiedad*, recurrido, compareció por escrito; *Francisco M. Vázquez Santoni*, de la *Asociación de Notarios de Puerto Rico, amicus curiae.*

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

Opinión del Tribunal emitida por el Juez Asociado Señor Negrón García.

I

Milagros Teresa Josefina Gorbea Balseiro otorgó un *poder (power of attorney)* a Gladys Gorbea Vallés el 23 de junio de 1987 en la ciudad de Nueva York. Al otro día fue debidamente autenticado; subsiguientemente, el 30 de julio, protocolizado en Puerto Rico ante el notario William J. Riefkohl mediante la Escritura Núm. 18. Esa escritura de protocolización fue acompañada como documento complementario a la Escritura Núm. 14 de compraventa otorgada el 7 de julio de 1988 ante el notario Arturo Aponte Parés, [1] y presentada en el Registro de la Propiedad el 14 de julio de 1988.

---

[1] Compareció Gladys (por sí y como apoderada de Milagros), José A. y Angel, de apellidos Gorbea Vallés, Otto J., Madelaine J. y Lorraine J., de apellidos Riefkohl Gorbea, como vendedores de una propiedad a los cónyuges Jesús E. Marrero Vázquez y Gina De Lucca Juncos.

El Registrador (Hon. Oscar Olivencia Font) se negó a inscribir fundado en lo establecido en los Arts. 1313 y 1604 del Código Civil, 31 L.P.R.A. secs. 3672 y 4425, respectivamente, y en su interpretación retroactiva de la opinión *Zarelli v. Registrador*, 124 D.P.R. 543 (1989). Dicho caso explica en detalle los elementos necesarios en la redacción del escrito de *poder* para que el mandato cobre vigencia en nuestra jurisdicción, tenga acceso al Registro de la Propiedad y cumpla la función para la cual fue destinado.[2] A juicio del Registrador, el *poder* a favor de Gladys otorgado en Nueva York no cumple con las normas jurídicas prevalecientes y no hay margen para una interpretación prospectiva.

En contra —los recurrentes Gorbea Vallés *et al.*— mantienen que debido a que el *poder* se otorgó y protocolizó en un momento en que la doctrina vigente lo permitía, debemos darle validez; esto es, interpretar prospectivamente *Zarelli v. Registrador*, supra.

Por su parte, la Asociación de Notarios de Puerto Rico, en calidad de *amicus curiae*, alude a ese mismo problema y, además, nos trae a colación la confusión principal planteada:

> La referida frase "es indispensable que el poder mencione que el inmueble está localizado en Puerto Rico", da la impresión de que todos los poderes que se vayan a calificar de ahora en adelante[, ] aunque la opinión no expresa si el dictamen es prospectivo o retroactivo[, ] en cuanto se trate de inmuebles, ya sean éstos gananciales o privativos, tienen que contener una expresión a los efectos de que *el inmueble está localizado en Puerto Rico*.
>
> Ello pudiera resultar en un formalismo o una limitación innecesaria que habrá de crear grandes obstáculos e incertidumbre en la calificación de los *miles de poderes que ya se han otorgado* y que se encuentran vigentes en nuestro tráfico jurí-

---

[2] La opinión especifica la necesidad de que el mandato sea expreso y expone guías de redacción para este fin.

dico, así como para los que se otorguen en el futuro." (Énfasis suplido.) Alegato del *Amicus Curiae*, págs. 1–2.

En síntesis, la controversia medular se reduce a determinar si la doctrina de *Zarelli v. Registrador*, supra, es retroactiva; de ello depende si confirmamos o no al Registrador.

## II

 Nuestro derecho vigente es claro en exigir que un mandato cumpla con los requisitos del Código Civil. El Art. 1604 del Código Civil, *supra*, dispone que "[e]l mandato concebido en términos generales no comprende más que los actos de administración. Para transigir, enajenar, hipotecar o ejecutar cualquier otro acto de riguroso dominio se necesita mandato expreso. La facultad de transigir no autoriza para comprometer en árbitros o amigables componedores". En lo pertinente, el Art. 1313 del Código Civil, *supra*, establece que "ninguno de los dos [esposos] podrá donar, enajenar, ni obligar a título oneroso, los bienes muebles e inmuebles de la sociedad de gananciales, *sin el consentimiento escrito del otro cónyuge ...*". (Énfasis suplido.)

 En *Zarelli v. Registrador*, supra, págs. 553–555, dijimos:

A modo de resumen, el mandato puede ser: (1) mandato general "en términos generales"; (2) mandato general "en términos específicos"; (3) mandato especial "en términos generales" o; (4) mandato especial "en términos específicos". Si se trata de un mandato (ya sea general o especial) elaborado en términos generales, solamente dará lugar a la realización de actos de administración. Art. 1604 del Código Civil, *supra*. Si por el contrario se trata de un mandato en términos específicos, existirá una autorización para efectuar la gestión o el negocio detallado en el contrato. Para enajenar, gravar o hipotecar un bien se necesita un mandato en términos específicos. M. Albaladejo,

*Derecho Civil*, Barcelona, Ed. Bosch, 1977, T. II, Vol. 2, pág. 356.

El Art. 1604 del Código Civil, *supra*, establece que para realizar cualquier acto de riguroso dominio se necesita un mandato expreso. Son actos de riguroso dominio o de disposición *aquellos "que afectan trascendentalmente el patrimonio de una persona"*, tales como gravar, enajenar o hipotecar, etc. J.R. León, *Comentarios al Código Civil y compilaciones forales*, Madrid, Ed. Rev. Der. Privado, 1986, T. XXI, Vol. 2, págs. 115–116.

El mandato expreso necesita contener una declaración que revele la intención de realizar un acto de disposición específica. Se requiere una manifestación clara, concreta y determinada sobre la intención del mandante. *Madera v. Metropolitan Const. Corp.*, 95 D.P.R. 637, 648 (1967).

. . . . . . . . .

En casos de disposición de inmuebles, el mandato debe ser lo suficientemente específico para que no haya lugar a dudas sobre el alcance de los actos permitidos y se pueda determinar cuáles son las participaciones o intereses sobre los bienes inmuebles afectados. Sin embargo, no es necesario describir exactamente los términos de los negocios jurídicos permitidos ni las propiedades específicas envueltas en las transacciones autorizadas. El mandato es válido si contiene una descripción general de los negocios autorizados y una referencia a si incluye bienes muebles e inmuebles. *Ribot v. Registrador*, 98 D.P.R. 497, 504 (1970). Tampoco se requiere que la expresión específica sea por escrito. *In re Feliciano Ruiz*, 117 D.P.R. 269, 277 (1986).

Pero en el caso particular de bienes gananciales, la definición de mandato expreso debe ser interpretada de forma compatible con el Art. 1313 del Código Civil, *supra. En lo pertinente, dicho artículo requiere que para enajenar los bienes inmuebles de la sociedad legal de gananciales será necesario el consentimiento escrito de los cónyuges. Por lo tanto, un mandato expreso en este caso tendrá que ser escrito.* (Énfasis suplido.)

■ El principio de que los bienes inmuebles están sujetos a las leyes del país en que están sitos —Art. 10 del Código Civil, 31 L.P.R.A. sec. 10— los Arts. 1313 y 1604 del Código Civil, *supra*, y la jurisprudencia antes mencionada gobiernan la solución de autos. Concerniente a *poderes*, aplicaremos los preceptos de nuestro derecho notarial y el registral-hipotecario. Reiteramos que el principio de lega-

lidad registral visualiza que sólo logren acceso al Registro de la Propiedad títulos válidos y perfectos; ello se logra a través de la calificación del Registrador. Véanse: *Casa Blanca Properties v. Registrador*, 130 D.P.R. 609 (1992); *U.S.I. Properties, Inc. v. Registrador*, 124 D.P.R. 448 (1989); *Mojica Sandoz v. Bayamón Federal Savs.*, 117 D.P.R. 110 (1986); *Kogan v. Registrador*, 125 D.P.R. 636 (1990). Con esta sucinta exposición en mente abordemos el problema de retroactividad.

## III

Son innumerables las ocasiones en que nos hemos dado a la tarea de darle vigencia prospectiva a ciertas doctrinas jurídicas. *Correa Vélez v. Carrasquillo*, 103 D.P.R. 912, 918 (1975); *Rivera Escuté v. Jefe Penitenciaría*, 92 D.P.R. 765, 782 (1965). El criterio para seleccionar una u otra alternativa muchas veces es *ad hoc*, dependiendo de la situación fáctica, circunstancias del caso en particular y consideraciones de equidad y hermenéutica. Varias son las alternativas. Podríamos negarnos a imprimirle efecto retroactivo a una regla para, a manera de excepción, proteger solamente un interés en particular. Véanse: *Pueblo v. Báez Cintrón*, 102 D.P.R. 30, 36–37 (1974), que a su vez cita a *Pueblo v. París Medina*, 101 D.P.R. 253 (1973), y a *Rivera Escuté v. Jefe Penitenciaría*, supra. En otras ocasiones hemos reconocido la retroactividad, con la salvedad de que no se extiende a otros casos. *Pueblo v. Cruz Jiménez*, 99 D.P.R. 565 (1971).

*A contrario sensu*, muchas veces consideraciones de índole social juegan un papel importante. En *Warner Lambert Co. v. Tribunal Superior*, 101 D.P.R. 378, 396 (1973), dijimos:

La razonabilidad del estatuto se determina tomando en consideración principalmente la sustancialidad del interés público promovido por el mismo y la dimensión del menoscabo ocasionado por su aplicación retroactiva. Véanse: *Home Building &*

*Loan Association v. Blaisdell*, 290 U.S. 398; Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation*, 73 Harv. L. Rev. 701. Mientras más grave sea el mal social que el estatuto intenta remediar más grande es el interés público envuelto; y, por tanto, mayor justificación para su aplicación retroactiva.

En el área específica que nos ocupa existen varias instancias. Nuestra Resolución de 18 de marzo de 1991, *In re Anotaciones Registro de Poderes*, 128 D.P.R. 202 (1991), recoge una situación en que imprimimos carácter prospectivo a una norma para la inscripción de poderes otorgados en el extranjero. La misma parece ser la *mise en scène* de experiencias pasadas, en que fue necesario aclarar el alcance y la vigencia de la legislación en controversia. Así surge si estudiamos en retrospectiva *In re Secretario Tribunal Supremo*, 104 D.P.R. 696 (1976), en que aclaramos, para fines de nuestro Registro de Poderes, el trámite a seguirse para la protocolización y registro de los *poderes* otorgados en el exterior.

Una situación similar a la de autos fue examinada en *Colón v. Registrador*, 87 D.P.R. 895 (1963). Allí el Registrador sostuvo que la Ley de Registro de Poderes —Ley Núm. 62 de 8 de mayo de 1937 (4 L.P.R.A. sec. 921 *et seq.*)— requería que los *poderes* otorgados *antes* de su vigencia fuesen inscritos en el Registro de Poderes tal y como establece dicha ley. Ante esa difícil encrucijada hermenéutica, expresamos:

> [La mencionada ley n]ada dispuso expresamente en cuanto a los poderes otorgados o protocolizados antes de su vigencia. Específicamente la ley provee que se remita la notificación al Tribunal Supremo dentro de un período de tiempo estipulado. ¿Cuándo es que tendrían la obligación de notificarlo los notarios que otorgaron las escrituras de poderes antes de 1937? ¿Inmediatamente de entrar a regir la ley? ¿Qué responsabilidad podría exigírsele a los que no lo hicieron, si no hay un precepto específico que los obligue?

La ley no distinguió entre los poderes otorgados antes de su vigencia y los otorgados después. A partir de la vigencia de la ley todo poder otorgado fuera de Puerto Rico que no esté protocolizado hay que protocolizarlo y registrarlo en el Registro de Poderes para que pueda ser considerado a los fines de acreditar las facultades del apoderado.

Es claro que no se requiere que poderes otorgados en Puerto Rico antes del 6 de agosto de 1937, fecha en que entró en vigor la ley, sean notificados al Secretario del Tribunal Supremo para su inscripción en el Registro de Poderes. *Colón v. Registrador*, supra, pág. 897. Véase, también, *Rosario v. Registrador*, 59 D.P.R. 428, 434 (1941).

La casuística mencionada refleja la potestad inherente del Tribunal para ejercer su discreción y conceder remedios justos y equitativos que respondan a la mejor convivencia social contemporánea. Es imperativo sopesar el propósito que se persigue a través de la implantación de las diferentes normas y preceptos jurídicos con las condiciones de índole práctica generadas por la puesta en marcha de aquellas medidas que adelantan ese propósito teórico que, a su vez, sirvió de génesis a la norma o precepto a implantar. Por ende, es sumamente importante que nuestro razonamiento esté atemperado con dichos principios prácticos.

■ Auscultar el propósito que persigue una regla para determinar la aplicación retroactiva de la misma es uno de los criterios más relevantes, aunque no exclusivo. *Pueblo v. Cruz Jiménez*, supra, pág. 567, y casos allí citados. Otros criterios "son el 'reliance (confianza) de la vieja regla' *y el efecto de la nueva regla en la administración de la justicia*". (Énfasis suplido.) Íd.

## IV

Los argumentos de los recurrentes y del *amicus curiae* son sumamente convincentes. Darle efectos retroactivos a la doctrina de *Zarelli v. Registrador*, supra, inevitablemente conllevaría una injusticia, propiciaría múltiples de-

negatorias registrales y podría conllevar la nulidad de varios negocios.

El poder aquí implicado es uno bien específico. Al otorgarse no se había resuelto *Zarelli v. Registrador*, supra. Los recurrentes descansaron y se adhirieron a la práctica legal de aquella época. Nada mas lógico y justo que su alcance hermenéutico y obligatoriedad de precedente sea prospectivo.

■ Réstanos atender el pedido del Registrador y del *amicus curiae* en cuanto al lenguaje siguiente —párrafo segundo, parte IV— de *Zarelli v. Registrador*, supra, pág. 556:

> Aunque no es necesario hacer una descripción registral de la propiedad ganancial, *es indispensable que el poder mencione que el inmueble estaba localizado en Puerto Rico* y qué tipo de negocio se puede realizar. (Énfasis suplido.)

Aducen reparos en que sea imperativo incluir en la redacción de los poderes información alusiva a la localización del inmueble objeto del poder, dentro de la extensión territorial y término jurisdiccional de Puerto Rico.

Hemos reflexionado al respecto. No creemos que ese requerimiento sea una carga onerosa al ejercicio del notariado, o que impida el libre tráfico de los negocios jurídicos por vía de *poderes*. Fijada su prospectividad, todo es cuestión de incorporar a la práctica ese lenguaje que, a fin de cuentas, es consecuencia natural y lógica del "propósito perseguido por nuestra tradición civilista al requerir mandato expreso ...". *Zarelli v. Registrador*, supra, pág. 556. Esa información, al formar parte de la redacción de *poderes*, es un elemento consustancial de la definición de "mandato expreso" a tono con la visión que gobierna la disposición de bienes inmuebles gananciales según nuestro Código Civil.

Por los fundamentos expuestos, *se dictará sentencia revocatoria*.

El Juez Asociado Señor Alonso Alonso emitió opinión concurrente y disidente, a la cual se unió la Juez Asociada Señora Naveira de Rodón.

— O —

Opinión concurrente y disidente emitida por el Juez Asociado Señor Alonso Alonso, a la cual se une la Juez Asociada Señora Naveira de Rodón.

Estoy conforme con las partes I, II, III y IV de la opinión del Tribunal, salvo lo expuesto y decidido en la parte IV que requiere que el poder mencione que el inmueble estaba localizado en Puerto Rico y qué tipo de negocio se puede realizar.

Por los fundamentos que expresé en mi opinión concurrente y disidente en el caso de *Zarelli v. Registrador*, 124 D.P.R. 543 (1989), entiendo que no es indispensable que el poder mencione que el inmueble está localizado en Puerto Rico y qué tipo de negocio se puede realizar.

Continúo sosteniendo que se puede otorgar un poder, bien sea general o especial, que contenga una descripción general del negocio o acto a realizarse sin tener que hacer referencia al inmueble ganancial objeto de éste, y mucho menos que el inmueble está localizado en Puerto Rico y qué tipo de negocio se puede realizar.

Como se desprende del Art. 1604 del Código Civil, 31 L.P.R.A. sec. 4425, lo que se requiere es que el mandato sobre el *acto* de dominio sea *expreso*. Ello no requiere que se identifique la exactitud del objeto o del inmueble específico que se va a enajenar, transigir, hipotecar o ejecutar.

De igual manera, en el caso de bienes gananciales, el Art. 1313 del Código Civil, 31 L.P.R.A. sec. 3672, no requiere que se indique el bien en específico que se autoriza a

enajenar, sino que medie un consentimiento *escrito* y *expreso*.

Como expresara en mi opinión concurrente y disidente en el caso de *Zarelli v. Registrador*, supra.

La economía de Puerto Rico es una abierta. Miles son las transacciones económicas que se realizan entre personas y entidades de todos los países del mundo y entre millones de compatriotas que viven en Estados Unidos y en Puerto Rico. Además, muchas de las transacciones económicas internacionales se hacen con personas o entidades de países cuyas disposiciones sobre el mandato son de estirpe civilista similares a las nuestras, tales como: España, México, Brasil, Colombia, Costa Rica, Chile, Ecuador, El Salvador, Guatemala, Honduras, Nicaragua, Panamá, Paraguay, Perú, República Dominicana, Uruguay, Venezuela, Argentina y Canadá, para solo mencionar algunos.

Dada esta realidad, la tendencia contemporánea es ajustar las normas jurídicas del mandato para lograr una mayor uniformidad jurídica que haga viable este tráfico económico internacional.

No debemos dar la espalda a esta realidad y a unas disposiciones del Código Civil claras y precisas que van a tono con la misma, y hacer interpretaciones que no concuerdan con la realidad jurídica, social y económica del momento y del futuro.

Por la razones allí expuestas y aquí reiteradas, disiento de este último dictamen del Tribunal.