La Jueza Asociada Señora Fiol Matta
emitió la opinión del Tribunal.
Para atender los hechos de este caso debemos precisar las solemnidades requeridas para la validez de un contrato de donación en la República Dominicana y en nuestro or-denamiento para determinar si un documento otorgado en aquel país puede ser inscrito en el Registro de la Propiedad según Artículo 46 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. see. 2209.
I
El 30 de septiembre de 1985 el Sr. Jesús María Felipe Rosario y la Sra. Miriam González Machado, casados entre sí, adquirieron una propiedad ubicada en el barrio Mora del municipio de Isabela, Puerto Rico, por el precio de $38,300 y con conocimiento de que dicha propiedad estaba gravada por una hipoteca a favor del Banco Popular de Puerto Rico (Banco Popular). El 18 de septiembre de 1987 se divorciaron por consentimiento mutuo y acordaron en la sentencia de divorcio que el señor Felipe Rosario le vende-ría a la señora González Machado su participación sobre la propiedad situada en Isabela.
Según acordado, el 19 de noviembre de 1998 el señor Felipe Rosario vendió, cedió y transfirió a la señora Gon- *452 zález Machado todos sus derechos sobre el inmueble de referencia por la suma de cien pesos de oro de la República Dominicana. Esta venta se llevó a cabo ante un notario público de dicho país, a través del documento titulado “Contrato de Venta Bajo Firma Privada”, al cual se le aña-dió la certificación del Consulado de Estados Unidos de América en República Dominicana.
El 17 de abril de 1999 la señora González Machado sus-cribió la Escritura Núm. 53 sobre “Protocolización de Con-trato de Venta Bajo Firma Privada” ante un notario pú-blico, en el municipio de Isabela, Puerto Rico. El notario transcribió en la escritura el “Contrato de Venta Bajo Firma Privada” otorgado en República Dominicana. Ade-más, lo unió a la escritura e hizo constar que el propósito de la protocolización era elevar el contrato privado a un documento público en nuestra jurisdicción.
El 15 de junio de 1999 el Banco Popular presentó una demanda en cobro de dinero y ejecución de hipoteca contra el señor Felipe Rosario, la señora González Machado y la Sociedad de Bienes Gananciales compuesta por éstos. Du-rante el proceso, el Banco Popular se enteró del divorcio y de la Escritura Núm. 53, por lo que solicitó que se conti-nuara la acción sólo contra la señora González Machado.
El Banco Popular presentó la Escritura Núm. 53 ante el Registro de la Propiedad, para su inscripción, el 7 de marzo de 2006. El Registrador de la Propiedad (Registrador) se negó a inscribir el documento. Indicó que la protocolización del documento de compraventa no tiene el efecto de ele-varlo a escritura pública ni le da acceso al Registro de la Propiedad. Además, señaló que el documento de compra-venta no incluía una equivalencia del precio de venta en dólares, lo cual era indispensable para fijar los aranceles notariales y regístrales. El Banco Popular presentó un es-crito de recalificación, en el cual, entre otras cosas, informó que la equivalencia en dólares del precio de venta del in- *453 mueble es $6.26959. El Registrador sostuvo su denegatoria.
En el Recurso Gubernativo presentado ante este Tribunal el 1 de noviembre de 2006, el Banco Popular alega que el Registrador erró al denegar la inscripción de la Escri-tura Núm. 53 sin tomar en consideración lo dispuesto en el Artículo 46 de la Ley Hipotecaria y del Registro de la Pro-piedad, supra, y el Artículo 11 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 11. Posteriormente, el Registrador presentó su alegato en respuesta al recurso. Con la compa-recencia de ambas partes pasamos a resolver.
II
 El Artículo 46 de la Ley Hipotecaria y del Registro de la Propiedad, supra, dispone que los documentos otor-gados fuera de Puerto Rico podrán ser inscritos en el Re-gistro de la Propiedad si reúnen los requisitos siguientes:
Primero. — Que el asunto o materia del acto o contrato sea lí-cito o permitido por las leyes de Puerto Rico.
Segundo. — Que los otorgantes tengan la aptitud y capacidad legal necesarias para el acto o contrato con arreglo a las leyes de su país. Sin embargo cuando se relacionen con bienes de menores de edad y de incapacitados, deberá haberse dado cumplimiento a las disposiciones legales vigentes en Puerto Rico.
Tercero. — Que en el otorgamiento se hayan observado las for-mas y solemnidades del territorio o país donde se han verifi-cado los actos o contratos, o las de Puerto Rico.
Cuarto. — Que el documento contenga la legalización y demás requisitos necesarios para su autenticación en Puerto Rico. Quinto. — Que dicho documento haya sido protocolizado por un notario en Puerto Rico si para su eficacia no requiere trámite judicial. (Énfasis suplido.) 30 L.P.R.A. sec. 2209.(1)
*454 Según el tercer requisito del Artículo 46, un documento otorgado fuera de Puerto Rico tendrá acceso al Registro de la Propiedad si cumple con las formas y solemnidades del país donde fue otorgado o las de nuestra jurisdicción. Esto nos requiere discutir las formas y solemnidades requeridas en la República Dominicana y Puerto Rico respecto al ne-gocio jurídico ante nuestra consideración.
Para ello es necesario precisar cuál es el negocio jurídico exacto que da lugar a este recurso. Se trata de un contrato relativo a un bien inmueble regulado, por ende, por el Artículo 10 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 10, que dispone que los bienes inmuebles se regirán por las leyes del país en que estén sitos. Aplica, por lo tanto, la norma conocida en el Derecho Internacional Privado como lex rei sitae, según la cual los actos y contratos relativos a bienes inmuebles se regirán por las leyes del país en que éstos estén ubicados. Sucn. Evans v. Srio. De Hacienda, 108 D.P.R. 713, 718 (1979). Véase, además, Zarelli v. Registrador, 124 D.P.R. 543, 550 (1989).
El documento ante nuestra consideración tiene el propósito de traspasar la titularidad de una finca en Isabela, Puerto Rico, por el precio aproximado de seis dólares. El precio que pagaron los contratantes para adquirir el inmueble sobrepasó los treinta y ocho mil dólares. Ante esta realidad debemos recordar la normativa que hemos desarrollado jurisprudencialmente sobre la simulación relativa contractual. Esta ocurre cuando los contratantes llevan a cabo un negocio jurídico aparente que encubre otro real con causa lícita, fingido o disimulado. En específico, hemos resuelto que hay una donación disimulada en un contrato de compraventa cuando la causa de dicho contrato *455 no es onerosa, sino que responde a la mera liberalidad de uno de los contratantes: el donante. Hernández Usera v. Srio. de Hacienda, 86 D.P.R. 13 (1962). Véanse, además: La Costa Sampedro v. La Costa Bolívar, 112 D.P.R. 9 (1982); Díaz García v. Aponte Aponte, 125 D.P.R. 1 (1989).
En la República Dominicana las donaciones de bienes inmuebles son un acto jurídico solemne. El Artículo 931 del Código Civil de la República Dominicana dispone:
Todo acto que contenga donación entre vivos, se hará ante no-tario, en la forma ordinaria de los contratos, protocolizándose, bajo pena de nulidad. (Énfasis suplido) N. Soto Castillo, Código Civil y compendio de legislación complementaria, 13ra ed., Santo Domingo, 2003, pág. 145.
Según este artículo, en el derecho común de la Repú-blica Dominicana las donaciones de bienes inmuebles son un acto jurídico solemne que debe constar en forma autén-tica, o acto auténtico, y no en acto bajo firma privada. El tratadista de derecho notarial dominicano, Dr. Manuel Víctor Gómez Rodríguez, explica que el Artículo 931 del Có-digo Civil de la República Dominicana requiere que las do-naciones de bienes inmuebles consten en acta notarial y no en un acto bajo firma privada. M.V. Gómez Rodríguez, Tratado de Derecho Notarial Dominicano, Santo Domingo, 1997, pág. 66.(2)
Según Gómez Rodríguez; en un acta notarial el notario da fe del contenido del documento. En particular, la auten- *456 ticación y clausura del acta “consiste de la declaración del notario mediante la cual él certifica y da fe de que este documento ha sido elaborado y firmado por él, de todo lo cual, él certifica y da fe, concediéndole la autentificación inherente a los actos de la autoridad pública, es decir la fe pública, por la cual tiene que ser creído por s[í] mismo y la plena fe de que se basta así mismo como medio de prueba completo y por excelencia del contenido del mismo Gómez Rodríguez, op. cit., págs. 49-50.
Sin embargo, en un acto bajo firma privada, el notario sólo da fe sobre la autenticidad de las firmas y no sobre el contenido del documento. Al respecto, Gómez Rodríguez explica:
[E]s conveniente explicar que el contenido del acto bajo firma privada NO LIGA al notario, el cual UNICAMENTE, tiene responsabilidad sobre las firmas, si estas son las de las perso-nas a las que el acto se refiere y si la estamparon libre y voluntariamente y en la fecha indicada, NO existe ninguna responsabilidad notarial. Gómez Rodríguez, op. cit., págs. 121-122.
Respecto a la solemnidad de las donaciones de bienes inmuebles, el tratadista de Derecho Civil dominicano, Carlos Romero Butten, explica lo siguiente:
En principio, la donación es un acto solemne, que debe ser pasado ante un Notario (Art. 391 C. Civil). La solemnidad del acto se explica por su gravedad: el Notario pondrá su atención sobre la disposición y sobre el carácter definitivo de la enaje-nación que consiente el donante. Sin embargo, de hecho, la regla de la solemnidad concierne a las donaciones de inmue-bles, por lo que muchas donaciones se realizan sin acto notarial, o mediante actos simulados o disfrazados. C. Romero Butten, Tratado Elemental de Derecho Civil, Santo Domingo, 2001, pág. 346.
En cuanto al derecho inmobiliario dominicano, el Artículo 189 de la Ley de Registro de Tierras de la Repú- *457 blica Dominicana establece los requisitos de redacción de los actos jurídicos. Dicho artículo dispone, en lo pertinente:
Los actos o contratos traslativos de derechos registrados, así como aquellos que estén destinados a constituir, radiar, redu-cir, prorrogar o extinguir gravámenes sobre inmuebles regis-trados, o que de cualquier forma afecten o se relacionen con esos mismos derechos, podrán redactarse en forma auténtica o bajo escritura privada. Art. 189 de la Ley 1542 de Registro de Tierras de la República Dominicana, Santo Domingo, 1999.
El tratadista Rafael Ciprián explica que aunque el Artí-culo 189 de la Ley de Registro de Tierras de la República Dominicana permite que los actos jurídicos que recaigan sobre los bienes inmuebles sean redactados en forma au-téntica o bajo escritura privada, las donaciones de inmue-bles siempre tendrán que hacerse conforme al derecho co-mún, o sea, en la forma de los actos auténticos y no bajo firma privada. En lo pertinente, Rafael Ciprián expresa lo siguiente:
El Artículo 189, modificado por las Leyes No. 1860, de fecha 18 de diciembre de 1948 y la No. 132, de fecha 20 de abril de 1961, de la Ley de Registro de Tierras es la columna vertebral de toda la serie de requisitos que impone el Legislador para la redacción de los actos jurídicos.
El referido texto legal establece que todos los actos traslativos de derechos inmobiliarios, o los que tengan por finalidad “constituir, radiar, reducir, prorrogar o extinguir gravámenes sobre inmuebles registrados, o que de cualquier forma afecten o se relacionen con esos mismos derechos, podrán redactarse en forma auténtica o bajo escritura privada”.
La disposición que establece que los actos jurídicos que se re-fieran a derechos inmobiliarios registrados podrán ser redac-tados en forma auténtica o bajo escritura privada, es muy importante. Primero porque reitera el carácter liberal de la Jurisdicción Catastral, y el interés del Legislador por facilitar las operaciones comerciales inmobiliarias y, segundo, porque introduce modificaciones importantes al derecho común. Sabe-mos que los actos de donación o de hipoteca en terrenos regis-trados tienen que hacerse en la forma de los actos auténticos, conforme al derecho común.
Ya sea que el acto jurídico se redacte en la forma auténtica o en la forma correspondiente a los denominados actos bajo firma *458 privada, se tendrán que respetar las formalidades que esta-blece el derecho común. (Enfasis suplido.) R. Ciprián, Tratado de Derecho Inmobiliario, Ira ed., Santo Domingo, 2003, págs. 870-871.
De igual forma, en nuestra jurisdicción las donaciones de bienes inmuebles son un acto jurídico solemne. En Hernández Usera u. Srio. de Hacienda, supra, establecimos que una donación disimulada de un bien inmueble es válida si cumple con los requisitos de forma ad solemnitatem de las donaciones de bienes inmuebles. En lo pertinente, el Artículo 575 del Código Civil de Puerto Rico dis-pone, en lo pertinente, lo siguiente:
Para que sea válida la donación de cosa inmueble ha de hacerse en escritura pública, expresándose en ella individual-mente los bienes donados y el valor de las cargas que deba satisfacer el donatario.
La aceptación podrá hacerse en la misma escritura de dona-ción o en otra separada; pero no surtirá efecto si no se hiciese en vida del donante. 31 L.P.R.A. see. 2010.
Por lo tanto, el contrato simulado que encubre la dona-ción tiene que ser otorgado en escritura pública, describir los bienes donados individualmente y hacer constar la aceptación del donatario en ésta o en una escritura sepa-rada, pudiendo deducirse tal aceptación de la firma del do-cumento simulado. En caso de una donación onerosa, en la que se le impone al donatario un gravamen sobre el valor de lo donado, el contrato simulado debe expresar las cargas que el donatario asume.(3) Hernández Usera v. Srio. de Hacienda, supra, pág. 25. Véanse, además: La Costa Sampe- *459 dro v. La Costa Bolivar, supra, pág. 26; Sucn. Toro v. Sucn. Toro, 161 D.P.R. 391 (2004).
Los tratadistas Diez-Picazo y Gullón explican que las formalidades ad solemnitatem
... son aquellas que necesitan una clase de negocios jurídicos para su existencia o nacimiento. La forma en ellos es sustan-cia, de tal modo que no existen como tales negocios si no apa-recen celebrados bajo la forma ordenada legalmente. Así, por ejemplo, la donación de bienes inmuebles sin este requisito (v. gr., en documento privado) es radicalmente nula o inexistente. L. Diez-Picazo y a. Gullón Ballesteros, Sistema de Derecho Civil, 9na ed., Madrid, Ed. Tecnos, 1997, Vol. I, pág. 512.
En Hernández Usera v. Srio. de Hacienda, supra, explicamos que la importancia de los requisitos de forma de las donaciones disimuladas de bienes inmuebles radica en su finalidad, que es proteger “ ‘al transferente contra sus desordenados impulsos, a su cónyuge, herederos y acreedores contra las lesiones de los derechos que el régimen económico familiar, la ley sucesoria o el principio patrimonial le confieren, y al donatario contra los riesgos de una adquisición en apariencia precaria o por lo menos desprovista de las defensas que las obligaciones recíprocas y los actos formales ponen enjuego Id., pág. 23, citando la Sentencia dictada el 5 de noviembre de 1956 por el Tribunal Supremo de España.(4)
*460 Finalmente, y pertinente a este caso, hemos establecido que la cuantía base para computar los derechos de arancel debe ser fija y reconocible, sin necesidad de ulterior determinación matemática. Al respecto, en Inspector de Protocolos v. Dubón, 107 D.P.R. 50, 64-65 (1978), explicamos lo siguiente:
La cuantía base para computar los derechos de arancel de un documento público notarial, sea escritura, acta o de cual-quier otra índole, de no aparecer del propio documento, deberá tomarse de las constancias, diligencias y anejos que se unen al original permaneciendo en el protocolo y que reflejen el valor envuelto en el acto o negocio jurídico objeto del otorgamiento.
III
En este caso, el señor Felipe Rosario vendió, cedió y transfirió a la señora González Machado todos sus dere-chos sobre un bien inmueble sito en Puerto Rico a través de un contrato privado titulado “Contrato de Venta Bajo Firma Privada”, por el precio aproximado de seis dólares. Del precio de este alegado contrato de compraventa se des-prende que el verdadero negocio jurídico llevado a cabo en-tre las partes fue una donación onerosa disimulada, ya que la señora González Machado asumió el gravamen sobre el verdadero valor de lo donado, en este caso, la hipoteca a favor del Banco Popular.
Luego de que un notario en Puerto Rico protocolizó el contrato a través de la escritura núm. 53, el Banco Popular lo presentó al Registro de la Propiedad para su inscripción, alegando que el documento cumple con los requisitos del Artículo 46 de la Ley Hipotecaria y del Registro de la Pro *461 piedad, supra. No tiene razón. La escritura núm. 53 no satisface el tercer requisito de dicho artículo, ya que no cumple con las formas y solemnidades de la República Dominicana ni las de Puerto Rico.
Según las formalidades exigidas en la República Domi-nicana, la donación del bien inmueble contenida en el do-cumento en controversia debió ser otorgada en forma au-téntica y no en una escritura bajo firma privada. Por esto, el “Contrato de Venta Bajo Firma Privada” no cumplió con las formas y solemnidades de la República Dominicana. Prueba de esto es que el notario sólo dio fe de la autentici-dad de las firmas de los otorgantes. En específico, el nota-rio expresó:
YO: LICDO. NICANOR GUILLERMO ORTEGA, Abogado y Notario P[ú]blico de los del N[ú]mero del Distrito Nacional, CERTIFICO Y DOY FE, que las firmas que anteceden fueron puestas en mi presencia libre y voluntariamente por los seño-res MIRIAM GONZALEZ MACHADO Y LICDO. JESUS MARIA FELIPE ROSARIO, de generales que constan, quienes me han declarado bajo la fe del juramento, que esas son las mis-mas con las cuales acostumbran firmar todos los actos de sus vidas en los cuales son partes. En Santo Domingo, Distrito Nacional, Capital de la República Dominicana, a los dieci-nueve (19) días del mes de noviembre del año mil novecientos noventa y ocho (1998).
De igual forma, el documento presentado ante el Registro de la Propiedad no cumplió con las formas y solemnidades de Puerto Rico, ya que no fue otorgado en escritura pública y no expresa las cargas que la donataria asumió, según lo requieren las formas ad solemnitatem de las donaciones de bienes inmuebles en nuestra jurisdicción.
Debido a que hemos establecido que la escritura núm. 53 no cumple con el tercer requisito del Artículo 46 de la Ley Hipotecaria y del Registro de la Propiedad, supra, no es necesario referirnos a los demás requisitos de dicho artículo.
Finalmente, según lo requiere nuestro ordenamiento, la *462 escritura núm. 53 debió contener la cuantía base para com-putar los derechos de arancel, de forma tal que no fuera necesario una determinación matemática ulterior, o sea, que no fuera necesario calcular su equivalencia en dólares.
Por los fundamentos antes expuestos, se confirma la de-negatoria del Registrador.

Se dictará sentencia de conformidad.

El Juez Asociado Señor Fuster Berlingeri no intervino.

 Respecto al Artículo 46 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. see. 2209, el Informe a la Cámara de Representantes sobre la Ley Hipotecaria y del Registro de la Propiedad de 1979 explica lo siguiente:
*454 “Los Artículos 45, 46 y 47 contienen disposiciones legales del campo del derecho internacional privado ‘Conflicts of Law’ en cuanto a documentos otorgados fuera de Puerto Rico. ... Se persigue con los mismos que los documentos provenientes de otras jurisdicciones sean lo mas confiables posible.” Informe a la Cámara de Representan-tes sobre el P. del S. 792, 8va. Asamblea Legislativa, 3ra. Sesión Ordinaria, junio de 1979.

 Los Artículos 1317 y 1322 del Código Civil de la República Dominicana defi-nen lo que son actos auténticos y actos bajo firma privada de la manera siguiente: “Es acto auténtico el que ha sido otorgado por ante [sic] oficiales públicos, que tienen derecho a actuar en el lugar donde se otorgó el acto, y con las solemnidades requeridas por la ley.” (Énfasis suplido.) Art. 1317 del Código Civil de la República Dominicana.
“El acto bajo firma privada, reconocido por aquél a quien se le opone, o tenido legalmente por reconocido, tiene entre los que lo han suscrito y entre sus herederos y causahabientes, la misma fe que el acto auténtico.” Art. 1322 del Código Civil de la República Dominicana. Véase Código Civil de la República Dominicana, Santo Domingo, Ed. Tiempo, 1987, págs. 202-203.

 En lo pertinente, el Artículo 560 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 1983, dispone lo siguiente:
“Las donaciones entre vivos pueden ser de tres clases:
“(1) La donación puramente graciosa o la que se hace sin condición y por mera liberalidad.
“(2) La donación onerosa, o aquella en que se impone al donatario un gravamen sobre el valor de lo donado.
“(3) La donación remuneratoria, o la que se hace a una persona por sus méritos o por servicios prestados al donante, siempre que no constituyan deudas exigibles.” (Enfasis suplido.)

 En lo pertinente, la cita del Tribunal Supremo de España expresa lo si-guiente:
“ ‘... [C]on arreglo a la tradición española, en el campo de las donaciones puras y simples de inmuebles, por reflejar los hechos inter vivos más que un modo abs-tracto e independiente de transferir la propiedad, un acto liberal que atribuye el dominio al donatario gratuitamente y que por significar una merma, sin contrapres-tación, del patrimonio del donante, y su enriquecimiento sin gravamen, del benefi-ciario, requiere requisitos y solemnidades que protejan al transferente contra sus desordenados impulsos, a su cónyuge, herederos y acreedores contra las lesiones de los derechos que el régimen económico familiar, la ley sucesoria o el principio patrimonial le confieren, y al donatario contra los riesgos de una adquisición en aparien-cia precaria o por lo menos desprovista de las defensas que las obligaciones recíprocas y los actos formales ponen en juego, habiendo de hacerse para que sea válida la donación de cosa inmueble, a tenor del art. 633 del Código Civil, en escritura pública, con expresión de los bienes donados y el valor de las cargas que deba satisfacer el donatario, pudiendo formalizarse la aceptación en la misma escritura u otra sepa- *460 rada, y aunque con tales preceptos no se cierra el paso de toda donación que pretenda llevarse a cabo en un instrumento público de compraventa, los intereses más arriba mencionados no quedan a salvo, si los elementos jurídicos que integran el acto disi-mulado y en especial el acuerdo de voluntades sobre gratuidad, alcance y condiciones de la transferencia, no son puestos de relieve de una manera indiscutible y auténtica.’ ” (Énfasis suplido.) Hernández Usera v. Srio. de Hacienda, 86 D.P.R. 13, 23 (1962), citando la Sentencia dictada el 5 de noviembre de 1956 por el Tribunal Supremo de España.