ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| LIZETH ANTONIA COLÓN RODRÍGUEZ<br><br>Parte Apelante<br><br>v.<br><br>SSCC INVESTMENT CORP.; VTC, LLC; BANCO POPULAR DE PUERTO RICO; HOMAR OBDULIO CRESPO TIZOL; MARGARET SHARKEY STUART Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS<br><br>Parte Apelada | KLAN202500443 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Caso Núm.: PO2019CV03140<br><br>Sala: 406<br><br>Sobre: Cobro de Dinero y Ejecución de Hipoteca por la Vía Ordinaria |

Panel integrado por su presidenta, la Jueza Grana Martínez, la Jueza Díaz Rivera y la Juez Lotti Rodríguez.

Díaz Rivera, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 18 de diciembre de 2025.

Comparece ante *nos*, la señora Lizeth Antonia Colón Rivera (señora Colón o apelante) y nos solicita que revisemos una *Sentencia Parcial* pronunciada y notificada el 27 de marzo de 2025 por el Tribunal de Primera Instancia (TPI, foro primario o foro apelado), Sala Superior de Ponce. Mediante dicho dictamen, el TPI desestimó parcialmente la *Segunda Demanda Enmendada* por cosa juzgada.[1]

Por los fundamentos que se exponen a continuación, se *confirma* la *Sentencia Parcial* apelada.

**I.**

El 9 de septiembre de 2019, la señora Colón presentó una *Demanda* sobre cobro de dinero y ejecución de hipoteca por la vía ordinaria. En resumen, alegó que, el 17 de mayo de 2012, le vendió una propiedad a SSCC Investment Corp. (SSCC o apelado) por

---

[1] La señora Colón solicitó que el foro primario reconsiderara su decisión el 11 de abril de 2025, pero el TPI declaró no ha lugar a su petitorio el 16 de abril de 2025 mediante una *Resolución Interlocutoria* notificada en esa misma fecha.

Número Identificador

SEN2025_____

$1,500,000.00 mediante escritura pública. Adujo que, en el aludido instrumento público, se constituyó una hipoteca sobre el inmueble para garantizar un pagaré de $1,056,111.88. Especificó que la escritura fue producto de una estipulación transaccional entre las partes en un caso anterior sobre *injunction*; la transacción judicial fue informada al tribunal durante una vista de entredicho celebrada el 14 de mayo de 2012. Puntualizó que otorgó la escritura de compraventa mediante la comparecencia de un apoderado, el señor Jorge Colón Vázquez (señor Colón); inmediatamente posterior a eso, el notario autorizó una escritura sobre segregación y liberación de hipoteca, a través de la cual quedó gravado con la hipoteca referida solo uno de los lotes segregados, liberándose así los demás. La señora Colón arguyó que no consintió a la autorización de la segunda escritura e impugnó su validez por vicio en el consentimiento y por el instrumento permitir que SSCC escogiera el lote que se iba a gravar. Asimismo, alegó que el negocio jurídico anterior se otorgó en fraude de acreedores. Por lo tanto, solicitó que se declarara su nulidad.

Luego de varios trámites procesales, el 2 de agosto de 2024, se autorizó la presentación de una *Segunda Demanda Enmendada* donde la señora Colón esbozó la razones por las cuales entendía que la escritura sobre segregación y liberación de hipoteca era nula. Pormenorizó que nunca consintió a la liberación de la hipoteca y que el lote gravado (lote B) tenía un valor sustancialmente menor al importe del principal del pagaré porque el anterior estaba tasado en $338,533.61. Asimismo, expuso que SSCC no cumplió con los pagos de los lotes segregados liberados, según valuados: lote A, $527,411.76; lote C, $332,598.74; lote D, $1.00; lote E, $1.00; lote F, $1.00, y lote G, $1.00; esto totalizaba $860,010.50. Por ende, estimó que la escritura de segregación y liberación era nula.

Posteriormente, el 9 de enero de 2024, SSCC presentó una *Moción de Desestimación Parcial de [la] Segunda Demanda Enmendada.* Mediante su petitorio, adujo que la causa de acción de nulidad de la escritura era improcedente en derecho por aplicar la doctrina de cosa juzgada debido a la celebración de la transacción judicial. El apelado acompañó con su solicitud una *Minuta* sobre la vista de *injunction* celebrada el 14 de mayo de 2012.

Así las cosas, el foro primario, fundamentándose en la regrabación de la vista de *injunction* del 14 de mayo de 2012, pronunció una *Sentencia Parcial* el 26 de febrero de 2025, notificada el 27 de febrero de 2025, mediante la cual desestimó la causa de acción sobre nulidad de la escritura. El TPI puntuó que la señora Colón, a través de su apoderado, prestó su consentimiento y aceptó la escritura de segregación y liberación por estar conforme con lo contenido en ella.

Insatisfecha, la apelante presentó una *Moción de Reconsideración* el 11 de abril de 2025. El foro apelado emitió una *Resolución Interlocutoria* el 16 de abril de 2025, notificada ese mismo día, denegando el petitorio.

Inconforme aún, el 16 de mayo de 2025, la señora Colón compareció ante *nos* mediante un recurso de apelación y señaló la comisión de los siguientes errores:

> Erró el Tribunal de Primera Instancia al dictar Sentencia Parcial desestimando la casa de acción presentada por la parte demandante en la que se solicitó que se declare Nula la Escritura Número 12 del 17 de mayo de 2012 por causa ilícita y falta de consentimiento.
>
> Erró el Tribunal de Primera Instancia al Desestimar Parcialmente la Segunda Demanda Enmendada, específicamente la Causa de Acción sobre nulidad de la Escritura Número 12 de 17 de mayo de 2012, bajo el fundamento de cosa juzgada entre las partes.
>
> Erró el Tribunal de Primera Instancia [al] expresar en la Sentencia Parcial que el representante legal de la parte demandante compareció a la firma de la escritura y tuvo la oportunidad de evaluar su contenido[,] y aceptó la mima en la forma en que fue redactada por ser y hallarla conforme a lo convenido cuando eso no es cierto.

Erró el Tribunal de Primera Instancia al negarle a la parte demandante su derecho a cuestionar la validez de la Escritura Número 12 en sí (su contenido y su legalidad) por el hecho de que se haya mencionado en el caso JPE2012-0267 que se otorgaría una Escritura sin que se expresara específicamente cuál sería su contenido.

Examinado el recurso de *Apelación,* este Tribunal articuló una *Resolución* el 21 de mayo de 2025 concediéndole un término de treinta (30) días al apelado para que expresara su posición sobre el recurso. El 15 de julio de 2025, SSCC presentó su *Alegato de la Parte Apelada.* Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A. Desestimación**

La Regla 10.2 de las de Procedimiento Civil, 32 LPRA Ap. V, le permite al demandado solicitar que se desestime la demanda en su contra antes de contestarla. R. Hernández Colón, *Práctica Jurídica de Puerto Rico, Derecho Procesal Civil,* 5ta ed., San Juan, LexisNexis de Puerto Rico, Inc., 2010, pág. 266. La precitada regla dispone lo siguiente:

> Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio; (6) dejar de acumular una parte indispensable. 32 LPRA Ap. V, R. 10.2.

Así pues, entre las defensas mediante las cuales una parte puede solicitar la desestimación de la causa instada en su contra, se encuentra el "dejar de exponer una reclamación que justifique la concesión de un remedio". *Íd.,* Regla 10.2 (5); véase *Costas Elena y otros v. Magic Sport y otros,* 213 DPR 523 (2024); *Bonnelly Sagrado et al. v. United Surety,* 207 DPR 715 (2021).

Ante una moción de desestimación fundamentada en la referida regla, "el tribunal tomará como ciertos todos los hechos bien

alegados en la demanda y que hayan sido aseverados de manera clara y concluyente, y que de su faz no den margen a dudas". *Cobra Acquisitions, LLC v. Mun. Yabucoa*, 210 DPR 384 (2022). Véase *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428 (2008); *Pressure Vessels P.R. v. Empire Gas P.R.*, 137 DPR 497, 505 (1994). Luego, debe determinar si, a base de esos hechos que aceptó como ciertos, la demanda establece una reclamación plausible que justifique la concesión de un remedio. *Costas Elena y otros v. Magic Sport Culinary y otros, supra.*

Asimismo, deberá interpretar las alegaciones de forma conjunta, liberal y de la manera más favorable posible en favor del demandante. *Bonnelly Sagrado v. United Surety, supra; Torres, Torres v. Torres et al.*, 179 DPR 481, 502 (2010). De hecho, tampoco procede la desestimación de la demanda si esta es susceptible de ser enmendada. *Clemente v. Dept. de la Vivienda*, 114 DPR 763 (1983).

Al atender este tipo de moción, el tribunal deberá tener en cuenta que, conforme lo dispone la Regla 6.1 de las de Procedimiento Civil, *supra*, la demanda solo tiene que contener "una relación sucinta y sencilla de la reclamación demostrativas de que el peticionario tiene derecho a un remedio", por lo que la norma procesal que rige establece que las alegaciones solo buscan "notificarle a la parte demandada a grandes rasgos, cuáles son las reclamaciones en su contra". *Torres, Torres v. Torres et al., supra*, pág. 501. Por lo que, una demanda no será desestimada, salvo que se demuestre "que el demandante no tiene derecho a remedio alguno, bajo cualesquiera hechos que pueda probar". *Consejo Titulares v. Gómez Estremera et al.,* 184 DPR 407, 423 (2012); *Aut. Tierras v. Moreno & Ruiz Dev. Corp., supra*, pág. 428. Por consiguiente, el asunto a considerar es, "si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de éste, la demanda es suficiente para constituir una reclamación

válida". *Pressure Vessels P.R. v. Empire Gas P.R., supra*, pág. 505. Finalmente, este mecanismo procesal no debe ser utilizado en aquellos casos que envuelven un alto interés público, excepto que no haya duda de que, de los hechos alegados en la demanda, no es posible conceder un remedio adecuado al demandante. *Aut. Tierras v. Moreno & Ruiz Dev. Corp., supra*, pág. 429.

### B. Contrato de transacción

Respecto al *contrato de transacción* sabemos que este es un "acuerdo mediante el cual las partes, dando, prometiendo o reteniendo cada una alguna cosa, evitan la provocación de un pleito o ponen fin a uno ya comenzado, con el propósito de evitar los pesares que conllevaría un litigio". *López Tristani v. Maldonado*, 168 DPR 838, 846 (2006), citando a *Rivera Rodríguez v. Rivera Reyes*, 168 DPR 193 (2006) *Igaravidez v. Ricci*, 147 DPR 1, 5 (1998); véase Artículo 1709 del Código Civil de Puerto Rico, 31 LPRA sec. 4821.[2]

Los elementos constitutivos de un contrato de transacción son: (1) una relación jurídica incierta litigiosa; (2) la intención de los contratantes de componer el litigio y sustituir la relación dudosa por otra cierta e incontestable, y (3) las concesiones recíprocas entre las partes. 31 LPRA sec. 4821; *López Tristani v. Maldonado, supra*, pág. 847, citando a *Neca Mortg. Coorp. V. A & W. Dev. S.E.*, 137 DPR 860, 870 (1995); véase S. Tamayo Haya, *El contrato de transacción*, Madrid, Thomson Civitas, 2003, pág. 75. En términos generales, toda transacción supone que las partes albergan dudas sobre la validez o corrección jurídica de sus respectivas pretensiones y optan por resolver dichas diferencias mediante concesiones mutuas. *Citibank v. Dependable* Ins. *Co., Inc.*, 121 DPR 503, 512 (1988), citando a *Sucn. Román v. Shelga Corp.,* 111 DPR 782, 791 (1981).

---

[2] Al recurso de epígrafe, le es aplicable el Código Civil de 1930, posteriormente derogado por la Ley Núm. 55-2020, mejor conocida como el Código Civil de 2020.

Como todo contrato, un acuerdo transaccional debe contener objeto, consentimiento y causa. 31 LPRA sec. 3391. Sobre la causa de un contrato de transacción, nuestro Tribunal Supremo ha expresado que "[e]n conjunto, el litigio y las recíprocas prestaciones constituyen los elementos de la causa". *López Tristani v. Maldonado*, *supra*, citando a Tomayo Haya, *op. cit.*, pág. 210; véase E. López de Barba, *El contrato de transacción, su resolución por incumplimiento*, Murcia, Ediciones Laborum, 2001, pág. 78. Por consiguiente, en todo contrato de transacción, "[e]s necesario que cada uno de los contratantes reduzca y sacrifique a favor de otro una parte de sus exigencias a cambio de recibir una parte de aquello objeto del litigio". Tamayo Haya, *op. cit.*, pág. 141; véase López de Barba, *op cit.,* pág. 89. Las concesiones recíprocas son de suma importancia porque estas "constituyen no [tan] s[o]lo el medio esencial para el desarrollo de la causa del negocio transaccional, sino que [e]stas pasan a formar parte de la causa". *López Tristani v. Maldonado*, *supra*, pág. 857.

De manera similar, Santos Briz plantea que la "reciprocidad en las prestaciones es la base indispensable de este contrato". J. Santos Briz y otros, *Tratado de Derecho Civil*, 1.ª ed., Barcelona, Editorial Bosch, S.A., 2003, T. IV, pág. 583. Por tanto, es necesario que las partes en este tipo de contrato "sacrifiquen y concedan al mismo tiempo alguna cosa en función de la superación del litigio sobre la cosa controvertida". Tamayo Haya, *op. cit.*, pág. 210; *López Tristani v. Maldonado Carrero*, *supra*, pág. 857. Es por ello que "[l]a consecuencia inmediata será que[,] a falta de recíprocas concesiones[,] no estaremos ante una transacción por falta de causa". Tamayo Haya, *op. cit.,* pág. 144.

### C. Cosa juzgada

La doctrina de cosa juzgada tiene como propósito el finalizar los litigios que fueron adjudicados de forma definitiva y, de este modo, "garantizar la certidumbre y seguridad de los derechos

declarados mediante una resolución judicial para evitar gastos adicionales al Estado y a los litigantes". *Presidential v. Transcaribe*, 186 DPR 263, 273-274 (2012); *PR Wire Prod. v. C. Crespo & Asoc.*, 175 DPR 139, 151 (2008). Así, esta defensa tiene el efecto de evitar que se relitiguen asuntos que fueron o que pudieron litigarse y adjudicarse en el pleito anterior. *Parrilla v. Rodríguez*, 163 DPR 263, 268 (2004). Según ha resuelto el Tribunal Supremo de Puerto Rico, "la presunción de cosa juzgada sólo tendrá efecto si existe la más perfecta identidad de las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron". *Presidential v. Transcaribe, supra,* pág. 274.

El requisito de la identidad de cosas significa que el segundo pleito versa sobre el mismo asunto adjudicado en el primer pleito, aunque las cosas se hayan disminuido o alterado. *Rodríguez Rodríguez v. Colberg Comas*, 131 DPR 212, 220 (1992). Es decir, existe identidad de las cosas "cuando un juez, al hacer una determinación, se expone a contradecir el derecho afirmado en una decisión anterior". *Presidential v. Transcaribe, supra,* págs. 274-275. Sobre el particular, hay que evaluar no sólo la cosa sobre la cual se origina la controversia, sino también el planteamiento jurídico que se genera en torno a ella". *Íd.*, pág. 275.

En cuanto al requisito de identidad de las causas, existe cuando los hechos y fundamentos de las peticiones son idénticos en lo que afecta la cuestión planteada. *Íd.* En otras palabras, al determinar si existe identidad de causas, debemos analizar si ambas reclamaciones se basan en la misma transacción o núcleo de hechos. *Íd.* Por otro lado, este requisito "exige que la parte demandante acumule en un pleito todas las posibles teorías legales en virtud de las cuales podría tener derecho a un remedio y que surjan de los mismos hechos transaccionales". *Martínez Díaz v. ELA*, 182 DPR 580, 586 (2011). Lo anterior, ya que el efecto

de cosa juzgada aplica no solamente a las reclamaciones alegadas en la demanda, sino también a todas aquellas que pudieron acumularse. *Íd.*

Debemos tener en mente que, "[a]un estando presentes los componentes necesarios para que la doctrina de cosa juzgada surta efecto, la referida figura legal no es absoluta y debe siempre considerarse conjuntamente con el saludable principio de que debe dispensarse justicia en cada caso*". Beníquez et al. v. Vargas,* 184 DPR 210, 224 (2012). Por ende, "la sentencia anterior es concluyente en cuanto a aquellas materias que de hecho se suscitaron y verdaderamente o por necesidad se litigaron y adjudicaron, pero no es concluyente en cuanto a aquellas materias que pudieron ser pero que no fueron litigadas y adjudicadas en la acción anterior". *Íd.*, págs. 225-226.

Así, la doctrina de cosa juzgada es lo que ha resuelto un tribunal competente, lo cual tiene el propósito de impartir finalidad a los dictámenes judiciales. *Casco Sales v. Mun. de Barranquitas*, 172 DPR 825, 833 (2007). Sin embargo, no procede esta doctrina de forma inflexible cuando hacerlo derrotaría los fines de la justicia, especialmente si involucran consideraciones de orden público. *Parrilla v. Rodríguez, supra,* pág. 270; *Pérez v. Bauzá,* 83 DPR 220 (1961).

### D. El mandato y el poder

Nuestro ordenamiento jurídico precisa que el mandato se caracteriza por el hecho de que una persona se compromete a "prestar algún servicio o hacer una cosa, por cuenta o encargo de otra". Artículo 1600 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 4421. El mandato puede ser expreso o tácito, y el expreso puede llevarse a cabo por instrumento público o privado, o verbalmente. *Íd.*, sec. 4422. Asimismo, el mandato puede ser general o especial; el general solamente acapara los actos de administración, mientras que el especial versa sobre uno o más negocios jurídicos

específicos. *Íd.*, secs. 4424 y 4425. Es importante puntualizar que, para enajenar, gravar, transigir o ejecutar cualquier acto riguroso de dominio, se requiere un mandato expreso, el cual debe ser específico, y que será interpretado restrictivamente. *Íd.*, sec. 4425; *Banco de San Juan v. Registrador*, 103 DPR 417, 422 (1975). El mandato expreso para llevar a cabo actos rigurosos de dominio debe ser específico, pero no se requiere que esa expresión se haga por escrito. Véase *Gorbea v. Registrador*, 133 DPR 308, 319-320 (1993).

Como regla general, el mandatario no puede rebasar los límites del mandato. 31 LPRA sec. 4426. Empero, "[n]o se consideran traspasados los límites del mandato si fuese cumplido de una manera más ventajosa para el mandante que la señalada por [e]ste". *Íd.*, sec. 4427. Es decir, si el mandatario actúa de buena fe para asegurar el mejor interés del mandante, no se considera que se ha extralimitado de su autoridad. Asimismo, el mandatario no responde personalmente con la parte que su mandante contrata, al menos que se obligue a ello o se haya excedido de los márgenes de su incumbencia. *Íd.*, sec. 4448.

Según el Artículo 1623 del Código Civil de 1930, el mandato se extingue por: (1) su revocación; (2) la renuncia del mandatario; (3) la muerte, quiebra o insolvencia del mandante o mandatario, o (4) por el mandante haber advenido incapaz para administrar sus bienes, salvo se haya otorgado un poder duradero. *Íd.*, sec. 4481.

Por otro lado, existen dos tipos de mandatos representativos: el indirecto y el directo. El primero se da cuando el mandatario actúa en su propio nombre, por lo cual el mandante no tiene un vínculo directo con el tercero; en el segundo, el mandante se obliga con el tercero mediante el acto al cual comparece su mandatario. *Zarelli v. Registrador*, 124 DPR 543, 552 (1989).

El poder se considera como un mandato representativo directo porque envuelve el hecho de que un mandatario (apoderado) actúa

en *representación* del mandante (poderdante). Dicho de otra forma, el apoderado lleva a cabo ciertos actos a nombre del poderdante, quien lo autorizó para ello.

Si se otorga un poder para la realización de un acto relacionado con un inmueble, este debe mencionar la propiedad y qué tipo de negocio jurídico está autorizado a realizar. *Íd.*, pág. 556. Por ello, el instrumento más apropiado para que opere la representación adecuada de alguno de los otorgantes no comparecientes en un negocio jurídico sobre un acto de riguroso dominio es el poder especial.

**III.**

Por estar íntimamente relacionados, discutiremos los señalamientos de error de forma conjunta. *Veamos*.

En el caso ante *nos*, la apelante arguyó que el TPI erró al desestimar parcialmente la *Segunda Demanda Enmendada* concluyendo que la acción de nulidad de la escritura de segregación y liberación constituía cosa juzgada. Alegó, además, que el foro primario incidió al determinar que el representante legal de la señora Colón compareció a la firma del instrumento público referido y que estuvo conforme con su contenido, por lo cual la apelante prestó su consentimiento. Asimismo, argumentó que el foro apelado se equivocó al negarle su derecho a cuestionar la validez de la escritura aludida fundamentado en el hecho de que, en el caso anterior, se estipuló que se otorgaría un instrumento sin abundar en sus pormenores.

Por su parte, SSCC recalcó que la apelante no puede volver a litigar el asunto del consentimiento a la escritura de segregación y liberación porque eso fue adjudicado en el caso JPE2012-0267. Acentuó que, habido transigido el caso basado en el hecho de que se celebraría una compraventa y constitución de hipoteca y que, posteriormente, se otorgaría una segregación y liberación que colocaría el gravamen original sobre uno de los lotes, la señora Colón

estaba impedida de impugnar la escritura de segregación y liberación por falta de consentimiento. Subrayó que el contrato de transacción es de naturaleza consensual y que, de acuerdo con el derecho vigente al momento de los hechos, el negocio jurídico se perfeccionó verbalmente durante la vista de *injunction* y no con la presentación del escrito sobre las estipulaciones transaccionales. Argumentó que, como el contrato es vinculante entre las partes y se utilizó para darle fin a una relación jurídica incierta, la impugnación de la apelante versa sobre cosa juzgada. Por ello, agregó que el TPI actuó correctamente al desestimar parcialmente el caso por ser cosa juzgada.

Según el derecho que antecede, entre las defensas mediante las cuales una parte puede solicitar la desestimación de la causa instada en su contra, se encuentra el "dejar de exponer una reclamación que justifique la concesión de un remedio". Regla 10.2 (5) de las de Procedimiento Civil, *supra*. Así, ante una moción de desestimación fundamentada en la referida regla, "el tribunal tomará como ciertos todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente, y que de su faz no den margen a dudas". *Cobra Acquisitions, LLC v. Municipio de Yabucoa, supra*. Luego, debe determinar si, a base de esos hechos que aceptó como ciertos, la demanda establece una reclamación plausible que justifique la concesión de un remedio. *Costas Elena y otros v. Magic Sport y otros, supra*.

Así pues, una demanda no será desestimada, salvo que se demuestre "que el demandante no tiene derecho a remedio alguno, bajo cualesquiera hechos que pueda probar". *Consejo Titulares v. Gómez Estremera et al., supra*.

En el caso que nos ocupa, SSCC presentó una solicitud de desestimación parcial. Consecuentemente, la señora Colón se opuso. Luego de varios trámites procesales, el foro *a quo* enunció

una *Sentencia Parcial* mediante la cual declaró ha lugar al petitorio de SSCC, desestimando parcialmente la demanda en lo que concernía a la causa de acción de nulidad de la escritura de segregación y liberación de hipoteca. Mediante este dictamen, el TPI sostuvo que, como en el caso anterior se indagó sobre la voluntad e intención de transar de las partes durante la vista de *injunction*, cuestionar la validez del negocio jurídico mencionado constituiría cosa juzgada.

Un análisis de las disposiciones legales aplicables, así como de las alegaciones de la *Segunda Demanda Enmendada*, nos lleva a concluir que procede confirmar la *Sentencia Parcial* declamada por el TPI. De las alegaciones de la *Segunda Demanda Enmendada*, surge que la apelante y el apelado suscribieron una estipulación transaccional mediante la cual SSCC desistía con perjuicio de la causa de acción de entredicho provisional y permanente, y sobre incumplimiento de contrato o cualquier otra incoada contra la señora Colón. Asimismo, la demanda esboza que, el 17 de mayo de 2012, se autorizó una escritura pública sobre compraventa y constitución de hipoteca; la señora Colón estuvo representada por el señor Colón durante el trámite. Además, aduce que, en la misma fecha, se autorizó una escritura de segregación y liberación de hipoteca mediante la cual quedó gravado solo uno de los lotes con la hipoteca referida; la señora Colón apuntaló que no consintió a este negocio jurídico y, por tanto, era nulo por carecer de consentimiento y causa. Fundamentó su señalamiento con el hecho de que la *Estipulación Transaccional* entre las partes solo consideraba y asentía a la celebración de una compraventa y constitución de hipoteca, no que luego se segregara el bien y solo quedara un lote de sustancialmente menor valor que el principal del pagaré afecto al gravamen hipotecario convenido. También, sostuvo que el único negocio jurídico acordado a través de su apoderado fue

el aludido, y que este apoderado *nunca* consintió a la liberación de la hipoteca.

Así, tomando como ciertos todos los hechos bien alegados en la *Segunda Demanda Enmendada*, surge claramente que la apelante no incluyó una alegación que aludiera a la vista de *injunction* celebrada el 14 de mayo de 2012, a la cual compareció su representación legal, SSCC y su apoderado. Tampoco surge de las alegaciones fácticas que, en esa vista, se discutieron los pormenores de la transacción acordada entre ambos; entre ellas, no resaltó que su apoderado, el señor Cruz, presenció y consintió *durante la audiencia* al hecho de que se celebraría una segregación y liberación posterior a la compraventa, y que solamente uno de los tres lotes quedaría gravado por la hipoteca pactada. Por otra parte, aseguró que ni consintió personalmente ni por conducto de su apoderado a la autorización de la liberación parcial, pero, de esa escritura, surge la comparecencia representativa del señor Colón y que este firmó el instrumento al estar de acuerdo con su contenido.

El planteamiento de nulidad de la escritura de segregación y liberación por falta de consentimiento y causa es improcedente; además, es contrario a lo estipulado por las partes durante la audiencia de entredicho celebrada el 14 de mayo de 2012. Las partes transaron la celebración de los cuatro negocios jurídicos involucrados; es decir, la señora Colón, mediante su apoderado, prestó su consentimiento para el otorgamiento eventual de las escrituras pertinentes, las cuales *resultarían en que la hipoteca gravara solo uno de los lotes segregados.*

Ahora bien, resulta imperativo recalcar que, al ejercer nuestra función revisora, la revisión se da contra la sentencia y no contra sus fundamentos. *Sánchez v. Eastern Air Lines, Inc.*, 114 DPR 691 (1983); *Collado v. ELA*, 98 DPR 111 (1969). Por ello y luego de un estudio y análisis minucioso del expediente del caso, concurrimos

con el hecho de que procede la desestimación de la causa de acción de epígrafe, pero bajo un fundamento distinto: el hecho de que, a través la celebración del negocio jurídico impugnado, se reunieron los requisitos para la perfección de un contrato válido; a saber, el consentimiento, el objeto y la causa. Colegimos entonces, que la escritura sobre segregación y liberación de hipoteca disputada plasma un *acuerdo vinculante y lícito* porque la señora Colón compareció a su otorgamiento a través de su apoderado, quien fungía como su representante legal autorizado; esto es un mecanismo representativo legítimo y avalado por nuestro ordenamiento para otorgar negocios jurídicos y, así, suplir el requisito del consentimiento en una relación contractual.

En atención a lo anterior, debemos concluir que el TPI actuó *correctamente* al desestimar el caso por haberse cumplido con los requisitos para la perfección de un contrato.

## IV.

Por los fundamentos que anteceden, los cuales se hacen formar parte de este dictamen, se *confirma* la *Sentencia Parcial* apelada.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Grana Martínez disiente sin voto escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones